**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **THE J.M. SMUCKER COMPANY**, | ) | |
| an Ohio Corporation | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 5:25-cv-02181-JRA |
| | ) | |
| v. | ) | Judge John R. Adams |
| | ) | |
| **TRADER JOE'S COMPANY**, | ) | **ORAL ARGUMENT REQUESTED** |
| a California Corporation | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT TRADER JOE'S
COMPANY'S MOTION TO DISMISS AND/OR TO TRANSFER VENUE**

# **TABLE OF CONTENTS**

**Page**

Statement of Issues to Be Decided ........................................................................................ 1

I.     Summary of Argument ................................................................................................ 2

II.    Factual Background .................................................................................................... 3

        A.    Trader Joe's ................................................................................................... 3
        B.    Smucker & Its Claims ................................................................................... 4
        C.    Additional Facts Relevant to Venue ............................................................. 5

III.   Legal Standards .......................................................................................................... 5

        A.    Motion to Dismiss ........................................................................................ 5
        B.    Motion to Transfer ....................................................................................... 6

IV.   Smucker's Dilution Claim Should be Dismissed With Prejudice ............................. 6

        A.    Establishing Fame for Purposes of Dilution Is No Small Task ................... 7
        B.    Smucker Fails to Adequately Plead Fame for the Uncrustables Design
              Marks ........................................................................................................... 9
        C.    Smucker Has Not Pled Fame for Each of the Uncrustables Design Marks .......... 12

V.    This Case Should Be Transferred to The Central District of California ..................... 14

        A.    This Action Could Have Been Brought in the Central District of California ........ 14
        B.    The Balance of Convenience and Interest of Justice Strongly Favor
              Transfer ....................................................................................................... 14

VI.   Conclusion ................................................................................................................. 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Airwair Int'l Ltd. v. Zoetop Bus. Co., Ltd.*,
  No. 24-cv-08437, 2025 WL 1282633 (N.D. Cal. May 2, 2025)............................................13

*Arcsoft, Inc. v. Cyberlink Corp.*,
  153 F. Supp. 3d 1057 (N.D. Cal. 2015) ...................................................................11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................................................6

*Bd. of Regents, Univ. of Texas Sys. ex rel. Univ. of Texas at Austin v. KST Elec., Ltd.*,
  550 F. Supp. 2d 657 (W.D. Tex. 2008) ....................................................... *passim*

*Bodine Perry, PLLC v. Bodine*,
  667 F. Supp. 3d 617 (N.D. Ohio 2023)....................................................................6

*Capri Sun GmbH v. Am. Beverage Corp.*,
  595 F. Supp. 3d 83 (S.D.N.Y. 2022)........................................................................8

*Deus ex Machina Motorcycles Pty. Ltd. v. Metro-Goldwyn-Mayer Inc.*,
  No. 20-cv-4822, 2020 WL 6875178 (C.D. Cal. Oct. 23, 2020) ............................10

*Everest Cap. Ltd. v. Everest Funds Mgmt., L.L.C.*,
  393 F.3d 755 (8th Cir. 2005) ...................................................................................7

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  564 U.S. 915 (2011).................................................................................................14

*H-D U.S.A., LLC v. Affliction Holdings, LLC*,
  No. 20-cv-01642, 2020 WL 5913850 (C.D. Cal. June 8, 2020).................................12, 13, 14

*Heller Inc. v. Design Within Reach, Inc.*,
  No. 09-cv-1909, 2009 WL 2486054 (S.D.N.Y. Aug. 14, 2009)................................7

*Hilber v. Malley's Candies, Inc.*,
  No. 22-cv-02305-BHB, 2025 WL 2402329 (N.D. Ohio Aug. 19, 2025),
  *reconsideration denied*, 2025 WL 2958215 (N.D. Ohio Oct. 17, 2025) ..................7

*Hutchins v. T1 Tequila, LLC*,
  No. 11-cv-557-CAB, 2013 WL 3289128 (N.D. Ohio June 28, 2013)............................ *passim*

*Leapers, Inc. v. SMTC, LLC*,
  No. 14-cv-12290, 2014 WL 4964376 (E.D. Mich. Oct. 3, 2014).............................8

ii

*Luv N' Care, Ltd. v. Regent Baby Prods. Corp.*,
    841 F. Supp. 2d 753 (S.D.N.Y. 2012).................................................................8, 12

*MGA Ent., Inc. v. Dynacraft BSC, Inc.*,
    No. 2:17-cv-08222, 2018 WL 2448123 (C.D. Cal. May 30, 2018)...........................8

*Mike Vaughn Custom Sports, Inc. v. Piku*,
    15 F. Supp. 3d 735 (E.D. Mich. 2014)..................................................................8, 12

*Monster Energy Co. v. Maple Leaf Sports & Ent. Ltd. and NBA Prop., Inc.*,
    Opp. No. 91222422, 2021 WL 1828119, at *24 (TTAB May 3, 2021) ....................8

*MZ Wallace Inc. v. Fuller*,
    No. 18-cv-2265, 2018 WL 4007645 (S.D.N.Y. Aug. 22, 2018).............................10

*Nationwide Life & Annuity Ins. Co. v. Golden*,
    No. 2:12-cv-213, 2013 WL 97718, at *11 (S.D. Ohio Jan. 7, 2013) (*NLAIC*),
    *R&R adopted*, 2013 WL 361060 (S.D. Ohio Jan. 29, 2013) .........................6, 14, 15

*NOCO Co. v. ABC Deals, Inc.*,
    No. 22-cv-01172-BMB, 2024 WL 519886 (N.D. Ohio Feb. 8, 2024) .......... *passim*

*Parts.com, LLC v. Yahoo! Inc.*,
    996 F. Supp. 2d 933 (S.D. Cal. 2013).................................................................10, 12

*Subversive Tools, Inc. v. Bootstrap Farmer LLC*,
    No. 23-cv-6946 (NSR), 2025 WL 3229122 (S.D.N.Y. Nov. 19, 2025) ..................11

*TrafFix Devices, Inc. v. Mktg. Displays, Inc.*,
    532 U.S. 23 (2001)..................................................................................................16

*Urb. Grp. Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc.*,
    No. 12-cv-3599, 2013 WL 866867 (S.D.N.Y. Mar. 8, 2013)................................10

*VJH Homes, LLC v. City of Cleveland*,
    No. 23-cv-02297-DAR, 2025 WL 2379983 (N.D. Ohio Aug. 15, 2025)................6

*Walker Wear LLC v. Off-White LLC*,
    624 F. Supp. 3d 424 (S.D.N.Y. 2022)...................................................................10

*Warner Bros. Ent. Inc. v. Random Tuesday, Inc.*,
    No. 20-cv-02416, 2020 WL 12762735 (C.D. Cal. Nov. 9, 2020) ..........................13

*Wonderful Co. LLC v. Nut Cravings Inc.*,
    No. 21-cv-03960, 2022 WL 4585344 (S.D.N.Y. Sept. 29, 2022) ......................9, 12

*Zimmer Enters., Inc. v. Atlandia Imports, Inc.*,
    478 F. Supp. 2d 983 (S.D. Ohio 2007) ...............................................15, 16, 17, 19

US-DOCS\166746072.2

## STATUTES

15 U.S.C.
    § 1121 .................................................................................................................... 14
    § 1125(c)(2)(A) ................................................................................................... 7, 8

28 U.S.C.
    § 1331 .................................................................................................................... 14
    § 1338 .................................................................................................................... 14
    § 1367 .................................................................................................................... 14
    § 1391(b)(1) .......................................................................................................... 14
    § 1404(a) ........................................................................................................ *passim*

## RULES

FED. R. CIV. P. 12(b)(6) ........................................................................................... 6

US-DOCS\166746072.2

## <u>STATEMENT OF ISSUES TO BE DECIDED</u>

Trader Joe's Company ("Trader Joe's") moves to dismiss The J.M. Smucker Company's ("Smucker") claim for trademark dilution and/or transfer the Complaint in its entirety to the United States District Court for the Central District of California.

*Issue One:*  Whether the Court should dismiss Smucker's claim for trademark dilution under Federal Rule of Civil Procedure 12(b)(6) with prejudice because Smucker has failed to meet the high bar required to plead fame for its Uncrustables Design Marks and has not pled fame for each of the Uncrustables Design Marks.

*Issue Two:*  Whether the Court should transfer the Complaint under 28 U.S.C. § 1404 to the United States District Court for the Central District of California because the balance of convenience, including the convenience of third-party witnesses, and the interest of justice strongly favor transfer.

1

## I.   SUMMARY OF ARGUMENT

Trader Joe's is a national chain of neighborhood grocery stores, known for offering outstanding value through quality products at the best everyday prices.  Through decades of careful curation, it has developed a one-of-a-kind reputation for friendly customer service and unique products.  In its namesake brick-and-mortar stores, shoppers can peruse and buy a wide selection of Trader Joe's-branded products—not sold by Trader Joe's *anywhere* else.  Not in other retailers.  Not via webstores.  Not even through online purchase-and-pickup.

Recently, Trader Joe's introduced a four-pack of individually wrapped frozen crustless peanut butter and strawberry jam sandwiches, designed to be a convenient lunch or snack.  Like many crustless PB&J sandwiches in the market, Trader Joe's thaw-to-eat sandwiches are "squircles," i.e., squares with rounded corners (▢) familiar to American consumers as the shape Apple uses for its application icons on phones and computers.  This design shape is functional— an overall shape of a slice of bread minus its crusts, sealed at the edges, to keep each sandwich's sweet and savory contents inside.  This case is about the ***shape*** of those crustless sandwiches.  Smucker makes round (◯), crustless sandwiches.  This suit proclaims that Smucker—and ***only*** Smucker—can sell crustless sandwiches with sealed edges that have any roundness to their shape.  In effect, Smucker's complaint seeks to monopolize a shape and design that the evidence in this case will ultimately show is and always has been functional.[1]

Even at this early stage, one of Smucker's claims should be dismissed.  Smucker claims that its sandwich shape, both whole and with a bite out of one edge, and a sandwich cartoon

---

[1] Although this motion is not intended to address Smucker's other claims, Trader Joe's intends to seek summary judgment following discovery on the grounds that no reasonable consumer could confuse the products' distinctive packaging, appearance, or ingredients—including because Trader Joe's sandwiches are vegan and free of ingredients in Smucker's sandwiches such as fully hydrogenated oils and the preservative potassium sorbate.

US-DOCS\166746072.2

character that Smucker introduced *in 2024*—are famous enough for a federal dilution claim. Smucker reaches too far.  Its sandwiches' appearance and cartoon avatar are no Nike swoosh or McDonald's golden arches.  As a result, Smucker's dilution claim should be dismissed.

Additionally, Smucker brought this action in Ohio, despite Trader Joe's clear California-based roots.  Because, among other things, key witnesses will be located in California, Trader Joe's primary presence is in California, the producer of Trader Joe's product is in California, and Smucker identifies no facts uniquely connecting this dispute to Ohio, this case should be transferred to the Central District of California.

## II.  FACTUAL BACKGROUND

### A.  Trader Joe's

Trader Joe's, together with its wholly-owned subsidiary, operates a national chain of neighborhood grocery stores, totaling over 620 stores across the United States, including 206 stores in California and just seven in Ohio.  Declaration of Kathryn Cahan ("Cahan Decl.") at ¶ 5.  Trader Joe's principal place of business is in Monrovia, California, located in the Central District of California.  Dkt. 1 ¶ 6; Cahan Decl. ¶ 4.  Trader Joe's is committed to providing its customers outstanding value in the form of the best quality products at the best possible prices. Before Trader Joe's introduces a new product, the prospective product is submitted to a rigorous tasting panel process that assesses product quality and value.  Cahan Decl. ¶ 6.

Trader Joe's recently introduced its new Crustless Peanut Butter & Strawberry Jam Sandwiches (the "Crustless Sandwiches"), a square sandwich with rounded corners that contains—as one would expect from the name—peanut butter and strawberry jam between two pieces of bread that are sealed together at the edges.  Dkt. 1 ¶¶ 2, 34.  As Smucker implicitly acknowledges, Trader Joe's product joined an existing "marketplace" in which "others" (beyond Smucker) "sell[] prepackaged, frozen, thaw-and-eat crustless sandwiches."  *Id.* ¶ 3.

3

### B.      Smucker & Its Claims

Smucker is an Ohio corporation that offers a variety of products, including crustless sandwiches that come in multiple flavors under the product name "Uncrustables."  Dkt. 1 ¶¶ 1, 4-5, 28.  It alleges that "Smucker's Uncrustables" is "the #1 frozen handheld *brand* in the United States," as a result of "decades of marketing and product development costing over a billion dollars."  *Id.* ¶ 1.[2]  Smucker also claims that it produces 1.5 billion Uncrustables sandwiches annually at three manufacturing facilities in Kentucky, Colorado, and Alabama.  *Id.* ¶ 30.

Smucker has obtained certain U.S. trademark registrations that it contends protect the shape of its Uncrustables sandwiches, i.e., "a pie-like shape with distinct peripheral undulated crimping to identify sandwich products" or "a round crustless sandwich."  *Id.* ¶¶ 13, 16, 19. Smucker depicts these claimed marks as shown below:

| U.S. Reg. No. 2,623,577 | U.S. Reg. No. 2,883,529 | U.S. Reg. No. 5,941,408 |
|---|---|---|
|  |  |  |

*Id.* ¶¶ 13, 16, 19, Dkts. 1-1, 1-2, 1-3.  In July 2025, Smucker also obtained U.S. Trademark Reg. No. 7,871,982 for a cartoonish character in the shape of "a round crustless sandwich," which according to Smucker was first used in 2024:



Dkt. 1 ¶ 21 & Dkt. 1-4.

---

[2] All emphasis is added and internal quotations and citations omitted, unless otherwise noted.

In this lawsuit, Smucker amalgamates those registrations—which do *not* encompass the Uncrustables brand name—as the so-called "Uncrustables Design Marks."  Dkt. 1 ¶ 23.  And based on the Uncrustables Design Marks (again, not including the Uncrustables brand name), Smucker brings five claims against Trader Joe's, including a claim for trademark dilution under the Lanham Act.  *See generally* Dkt. 1.  In support of that dilution claim, Smucker alleges that, collectively, the "Uncrustables Design Marks . . . have become famous trademarks."  *Id.* ¶ 32.

### C.    Additional Facts Relevant to Venue

***Trader Joe's.***  As noted above, Trader Joe's is a national grocery store chain, with just over 1% of its locations in Ohio.  *See* Cahan Decl. ¶ 5.  All of the Crew Members (Trader Joe's term for its employees) who worked on developing the Crustless Sandwiches and their packaging work in Monrovia, California.  *Id.* ¶ 7.  Trader Joe's Crustless Sandwich producer is likewise located in Los Angeles County, in the Central District of California.  *Id.* ¶ 8.  Employees associated with that producer will be knowledgeable regarding the production process, the functional necessity of the "ridges" around its edges, the impact of the production process on the overall shape of the sandwich, the product's development, and the product's packaging.  *Id.* ¶ 9.

***Smucker.***  Smucker is registered to do business in California, and operates a manufacturing plant in Oxnard, California, which is located in the Central District of California.  J.M. Smucker Company, *About Page*, *https://www.jmsmucker.com/about* (last visited Jan. 9, 2026).  As noted above, Smucker allegedly produces its Uncrustables sandwiches at three manufacturing facilities in Kentucky, Colorado, and Alabama.  Dkt. 1 ¶ 30.

## III.    LEGAL STANDARDS

### A.    Motion to Dismiss

The Court must dismiss a complaint that fails to "state a claim upon which relief can be

granted." FED. R. CIV. P. 12(b)(6).  To survive a motion to dismiss, Smucker's complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *VJH Homes, LLC v. City of Cleveland*, No. 23-cv-02297-DAR, 2025 WL 2379983, at *1 (N.D. Ohio Aug. 15, 2025).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Further, the Court "is not required . . . to accept as true mere legal conclusions unsupported by factual allegations." *Bodine Perry, PLLC v. Bodine*, 667 F. Supp. 3d 617, 626 (N.D. Ohio 2023). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *VJH Homes*, 2025 WL 2379983, at *1.

### B.      Motion to Transfer

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought." 28 U.S.C. § 1404(a).  The Court has "broad discretionary powers to transfer civil actions" after an "individualized, case-by-case consideration of convenience and fairness." *Hutchins v. T1 Tequila, LLC*, No. 11-cv-557-CAB, 2013 WL 3289128, at *6 (N.D. Ohio June 28, 2013).  In assessing a motion to transfer, courts use a two-step analysis that considers "(1) whether the action might have been brought in the proposed transferee court; and (2) whether considering all relevant factors, the balance of convenience and the interest of justice strongly favor transfer." *Nationwide Life & Annuity Ins. Co. v. Golden*, No. 12-cv-213, 2013 WL 97718, at *11 (S.D. Ohio Jan. 7, 2013) (*NLAIC*), *R&R adopted*, 2013 WL 361060 (S.D. Ohio Jan. 29, 2013).

## IV.    SMUCKER'S DILUTION CLAIM SHOULD BE DISMISSED WITH PREJUDICE

To state a claim for trademark dilution, Smucker must adequately plead the following elements: "(1) the senior mark is famous; (2) it is distinctive; (3) the junior use must be a

6

commercial use in commerce; (4) it must begin after the senior mark has become famous; and (5) it must cause dilution of the distinctive quality of the senior mark." *Hilber v. Malley's Candies, Inc.*, No. 22-cv-02305-BHB, 2025 WL 2402329, at *11 (N.D. Ohio Aug. 19, 2025), *reconsideration denied*, 2025 WL 2958215 (N.D. Ohio Oct. 17, 2025).  Smucker fails to plead that the Uncrustables Design Marks (which do *not* include the "Smucker's Uncrustables" product name) are famous, whether taken collectively or individually, and therefore its dilution claim fails out of the gate.

### A.    Establishing Fame for Purposes of Dilution Is No Small Task

Federal trademark dilution is reserved for only the most famous marks.  In this context, the term "famous" commands "a rigorous standard." *Everest Cap. Ltd. v. Everest Funds Mgmt., L.L.C.*, 393 F.3d 755, 763 (8th Cir. 2005).[3]  Indeed, "[o]ne of the major purposes of the [Trademark Dilution Revision Act of 2006] was to restrict dilution causes of action to those few truly famous marks like Budweiser beer, Camel cigarettes, Barbie Dolls, and the like." *Bd. of Regents, Univ. of Texas Sys. ex rel. Univ. of Texas at Austin v. KST Elec., Ltd.*, 550 F. Supp. 2d 657, 679 (W.D. Tex. 2008) (*Univ. of Tex.*).  "The policy rationale behind the fame requirement is to encourage and promote competition; without limiting protection to famous marks, anti-dilution laws would turn every trademark into 'an anti-competitive weapon.'" *Heller Inc. v. Design Within Reach, Inc.*, No. 09-cv-1909, 2009 WL 2486054, at *4 (S.D.N.Y. Aug. 14, 2009).

To meet this high bar for "fame," a mark must be "widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the

---

[3] In assessing whether trade dress is famous, courts consider:  "(i) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties; (ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark; (iii) The extent of actual recognition of the mark; [and] (iv) Whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register."  15 U.S.C. § 1125(c)(2)(A).

mark's owner."  *See* 15 U.S.C. § 1125(c)(2)(A).  It must be, effectively, recognized as the brand symbol for a "household name."  *Mike Vaughn Custom Sports, Inc. v. Piku*, 15 F. Supp. 3d 735, 748 (E.D. Mich. 2014) (federal dilution "protects a 'select class of marks' from a limited number of nationally recognized companies with a 'household name'").  And "[t]here is no cause of action for trade dress dilution for products based on 'niche fame, i.e. fame limited to a particular channel of trade, segment of industry or service, or geographic region,'" *id.*; instead, it must be "recognized . . . by the 'general consuming public of the United States.'"  *Luv N' Care, Ltd. v. Regent Baby Prods. Corp.*, 841 F. Supp. 2d 753, 759 (S.D.N.Y. 2012); *see also Leapers, Inc. v. SMTC, LLC*, No. 14-cv-12290, 2014 WL 4964376, at *4 (E.D. Mich. Oct. 3, 2014) (famous marks "are instantly recognizable nationwide by the population in general").

Would-be dilution plaintiffs have struggled to meet that standard—especially in cases, like this one, involving trade dress and design marks, not traditional "names."  Some examples of seemingly well-known trade dresses and design marks that were not sufficiently famous to support federal dilution claims include the Capri Sun pouch, the Texas Longhorn logo, the Monster Energy "M-Claw" mark, and The Little Tikes Company Cozy Coupe design mark. *Capri Sun GmbH v. Am. Beverage Corp.*, 595 F. Supp. 3d 83, 183 (S.D.N.Y. 2022) ("The Pouch Mark—meaning the shape of the pouch—is insufficiently famous"); *Univ. of Tex.*, 550 F. Supp. 2d at 679 (Longhorn logo achieved only "niche fame"); *Monster Energy Co. v. Maple Leaf Sports & Ent. Ltd. and NBA Prop., Inc.*, Opp. No. 91222422, 2021 WL 1828119, at *24 (TTAB May 3, 2021) ("impressive" advertising and sales numbers do not meet "the rigorous standards for establishing . . . a famous mark"); *MGA Ent., Inc. v. Dynacraft BSC, Inc.*, No. 2:17-cv-08222, 2018 WL 2448123, at *6 (C.D. Cal. May 30, 2018) (registered mark not famous despite allegations that plaintiff sold "the Cozy Coupe since 1979," "more than 10 million Cozy Coupe

vehicles ha[d] been sold worldwide," plaintiff "spent millions of dollars to develop, build, and promote" it, and it was the "primary representational symbol and mark for Little Tikes").

### B. Smucker Fails to Adequately Plead Fame for the Uncrustables Design Marks

Smucker's dilution claim is not based on the overarching "Smucker" name, or even the "Uncrustables" brand name.  Instead, Smucker claims that Trader Joe's is diluting the so-called "Uncrustables Design Marks," which effectively concern the shape of Smucker's crustless sandwich and a cartoonish character shaped like that sandwich, shown below:



The problem, however, is that Smucker fails to sufficiently allege that the Uncrustables *trade dress* and *design marks* are so "truly famous" to be among a class of "marks like Budweiser beer, Camel cigarettes, Barbie Dolls, and the like." *Univ. of Tex.*, 550 F. Supp. 2d at 679.[4]

Instead, Smucker's factual allegations regarding ostensible fame focus on Smucker itself and the Uncrustables ***name brand***.  Dkt. 1 ¶¶ 25-30.  For instance, Smucker alleges that "Smucker's Uncrustables branded products have grown over the past 20 years and the Uncrustables products are fast on their way to being a $1 billion brand." *Id.* ¶ 30.  But such allegations "do not plausibly allege that the trade dress itself—as opposed to the [Uncrustables] products or brand—has achieved the degree of recognition in the general population to qualify it as a famous mark." *Wonderful Co. LLC v. Nut Cravings Inc.*, No. 21-cv-03960, 2022 WL

---

[4] As a threshold matter, although the Uncrustables Design Marks are registered (Dkt. 1 ¶¶ 13-23), "one cannot logically infer fame from the fact that a mark is one of the millions on the federal Register." *Univ. of Tex.*, 550 F. Supp. 2d at 675.  That is especially the case for Reg. No. 7,871,982, for which registration was issued just recently in July 2025.  *See* Dkt. 1-4.

4585344, at *5 (S.D.N.Y. Sept. 29, 2022); *see also MZ Wallace Inc. v. Fuller*, No. 18-cv-2265,

2018 WL 4007645, at *3 (S.D.N.Y. Aug. 22, 2018) (allegations related to brand "are insufficient

to plead a claim that the Trade Dress itself, on which MZ Wallace bases this claim, is famous");

*Walker Wear LLC v. Off-White LLC*, 624 F. Supp. 3d 424, 431 (S.D.N.Y. 2022) (similar).

Similarly, Smucker's "allegations of extensive overall sales and advertising for [the

Uncrustables] product line are insufficient to unilaterally support an assertion that the trade dress

of those products has achieved the widespread renown necessary to establish fame." *Urb. Grp.*

*Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc.*, No. 12-cv-3599, 2013 WL 866867,

at *6 (S.D.N.Y. Mar. 8, 2013).

Further, even Smucker's allegations regarding the Uncrustables **brand** are lacking in

specificity necessary to establish "fame." *See, e.g.*, Dkt. 1 ¶¶ 1, 11-12, 30.  "[A]llegations of

extensive overall sales and advertising for a product line are insufficient to unilaterally support

an assertion that the trade dress of those products has achieved the widespread renown necessary

to establish fame." *Urb. Grp.*, 2013 WL 866867, at *6.[5]  And because Smucker fails to allege

"how many [Uncrustables] it sells in any given fiscal year, what its annual sales revenue is, or

where those sales are made," its allegations regarding sales are simply too conclusory.

*Parts.com, LLC v. Yahoo! Inc.*, 996 F. Supp. 2d 933, 941 (S.D. Cal. 2013); *see also Deus ex*

*Machina Motorcycles Pty. Ltd. v. Metro-Goldwyn-Mayer Inc.*, No. 20-cv-4822, 2020 WL

6875178, at *9 (C.D. Cal. Oct. 23, 2020) (plaintiff's allegations were "conclusory" because it did

not "allege how much of its apparel it sells (either worldwide or in the United States) in any

---

[5] It is also unclear from the complaint whether the sales/advertising figures alleged are limited to
the United States (*see* Dkt. 1 ¶¶ 1, 12, 30), and "to the extent that [Smucker's] allegations refer
to sales, advertising expenditures, or product usage in countries other than the United States . . .
these allegations are irrelevant to the fame analysis." *Urb. Grp.*, 2013 WL 866867, at *6.

given fiscal year, what its annual sales revenue is, or where those sales occur").

Nor do Smucker's passing references to a sum-total of two articles discussing Uncrustables establish fame.  *See* Dkt. 1 ¶ 30 n.2, ¶ 39.  To the contrary, because Smucker fails to provide "the particular contexts in which the" Uncrustables Design Marks appeared in these publications, this factor does not weigh in its favor.  *Arcsoft, Inc. v. Cyberlink Corp.*, 153 F. Supp. 3d 1057, 1066 (N.D. Cal. 2015) (allegations that mark appeared in "*The New York Times*, *The Washington Post*, *The Huffington Post*, *The Daily Mail*, *Allure* magazine, *TechCrunch*, *PCWorld*,  and *VentureBeat*" were insufficient to show fame without context).  And Smucker's complaint is notably lacking in any allegations regarding consumer surveys that might evidence fame of its claimed trade dress and design marks.  *See Subversive Tools, Inc. v. Bootstrap Farmer LLC*, No. 23-cv-6946 (NSR), 2025 WL 3229122, at *8 (S.D.N.Y. Nov. 19, 2025) (noting lack of allegations regarding "consumer surveys" in connection with motion to dismiss); *see generally* Dkt. 1.  For that matter, Smucker's allegations regarding social media coverage for Uncrustables actually *undercut* its claim to fame.  The Facebook advertisement shown in the complaint only received 115 likes, two comments, and one share.  Dkt. 1 ¶ 26.  Similarly, the cited Uncrustables Instagram post shows only 181 likes and 30 comments.  *See* *https://www.instagram.com/p/DMsb1nAu8oS/?utm_source=ig_web_copy_link&igsh=NW02aG U0Z2cwejlz* (cited by Dkt. 1 ¶ 26).  On the other hand, the Uncrustables co-branded Instagram post shows marginally higher levels of engagement, with 3,937 likes (though still quite a low number, considering Smucker's claim to fame).  Dkt. 1 ¶ 26.  This post, which was co-sponsored by @jacksonolson_, has almost 22 times more "likes" than the post that Uncrustables posted without any co-branding—further contravening Smucker's allegations of "fame."

Finally, Smucker's conclusory allegations that its sandwiches are "famous" and "have

11

gained widespread popularity with many *types* of consumers" do nothing to support its claim to fame.  Dkt. 1 ¶¶ 25, 31, 32.  For one, such "general allegations" about a product being "widely known" or "popular" do not meet Rule 12's pleading requirements.  *See, e.g.*, *Luv N' Care*, 841 F. Supp. 2d at 757-58 (rejecting "general allegations" that plaintiffs' products, designs, trademarks, and trade dress were "widely known" and "among the most popular and well known products in their industry"); *Wonderful*, 2022 WL 4585344, at *5 (similar); *Parts.com*, 996 F. Supp. 2d at 941 (allegations that "because of [plaintiff's] 'exclusive and continuous promotion' of its mark 'throughout the United States,' the mark 'has become a famous and well-known symbol'" were insufficient to allege fame) (cleaned up).  And perhaps more importantly, Smucker's allegation that its product is popular with "many *types* of consumers" tacitly admits that its sandwiches have not achieved fame with ***all*** types of consumers.  Dkt. 1 ¶ 25.  That directly undercuts Smucker's dilution claim, because the Trademark Dilution Revision Act "reject[ed] dilution claims based on niche fame, i.e. fame limited to a particular channel of trade, segment of industry or service, or geographic region."  *Luv N' Care*, 841 F. Supp. 2d at 758; *e.g.*, *Mike Vaughn*, 15 F. Supp. 3d at 748; *see Univ. of Tex.*, 550 F. Supp. 2d at 678 ("Simply because UT athletics have achieved a level of national prominence does not necessarily mean that the longhorn logo is so ubiquitous and well-known to stand toe-to-toe with Buick or KODAK.").

Accordingly, Smucker has failed to allege that the Uncrustables Design Marks are famous.  And therefore, its dilution claim should be dismissed with prejudice.

### C.    Smucker Has Not Pled Fame for Each of the Uncrustables Design Marks

Smucker's claim for trademark dilution also fails because Smucker does not separately allege fame for each of the four separate marks in its complaint that it refers to, collectively, as the Uncrustables Design Marks.  "[I]n an action alleging dilution of multiple marks, a plaintiff is required to plead facts demonstrating fame of each mark."  *H-D U.S.A., LLC v. Affliction*

12

*Holdings, LLC*, No. 20-cv-01642, 2020 WL 5913850, at *5 (C.D. Cal. June 8, 2020); *e.g.*,

*Warner Bros. Ent. Inc. v. Random Tuesday, Inc.*, No. 20-cv-02416, 2020 WL 12762735, at *9

(C.D. Cal. Nov. 9, 2020) (dismissing dilution claim where complaint did not "provide specific

allegations that link[ed]" allegedly "extensive use of *Harry Potter* properties in commerce" "to

specific marks," as would be "necessary").  Smucker's allegations about fame refer only to the

Uncrustables Design Marks collectively.  *E.g.*, Dkt. 1 ¶¶ 32, 33, 66.  Any "attempts to

distinguish between the variations of the [Uncrustables Design Marks] are largely absent."  *H-D*

*U.S.A.*, 2020 WL 5913850, at *5 (dismissing dilution claims where Plaintiff "pleaded numerous

facts indicating the Bar & Shield's Logo fame *collectively*").

     The problem with this collective approach is exemplified when considering the cartoon

character associated with Reg. No. 7,871,982.  Smucker alleges that it started using this claimed

mark in February 2024, and its associated registration claims an even later first use date in June

2024.  *Compare* Dkt. 1 ¶ 21 *with* Dkt. 1-4.  The registration itself was only issued six months ago

in July 2025.  Dkt. 1-4.  How, in under two years, this mark could have achieved "fame" at the

level of "Barbie," for example, is a mystery.  *Cf. Univ. of Tex.*, 550 F. Supp. 2d at 679.  The

complaint does not allege how this mark is used, where this mark has been used, or whether this

mark specifically is widely recognized.  Nor can Smucker's allegations regarding advertising

spend and sales related to its older marks support the fame of this mark because even if the

Uncrustables trade dress was well-known this "does not mean that every associated mark enjoys

a similar level of fame."  *Warner Bros.*, 2020 WL 12762735, at *8; *cf. Airwair Int'l Ltd. v.

Zoetop Bus. Co., Ltd.*, No. 24-cv-08437, 2025 WL 1282633, at *7 (N.D. Cal. May 2, 2025)

(granting motion for a more definite statement where Plaintiff alleged dilution claim based on

"fourteen separate trade dress and trademarks").

Because Smucker's allegations fail to plead fame for each of the Uncrustables Design Marks individually, and instead plead fame for the marks collectively, its allegations supporting its dilution claim are insufficient under the law.  *See H-D U.S.A.*, 2020 WL 5913850, at *5.

## V.  THIS CASE SHOULD BE TRANSFERRED TO THE CENTRAL DISTRICT OF CALIFORNIA

This action should also be transferred to the Central District of California, where the bulk of the relevant evidence is located.  *See* 28 U.S.C. § 1404(a).

### A.  This Action Could Have Been Brought in the Central District of California

To assess a motion for transfer, courts use a two-step framework.  The first step assesses whether the action could have been brought in the transferee court.  *NLAIC*, 2013 WL 97718, at *11.  "An action might have been brought in a transferee court if: (1) the court has jurisdiction over the subject matter of the action; (2) venue is proper there; and (3) the defendant is amenable to process issuing out of the transferee court."  *Id.*

Here, each of those factors is met.  First, the Central District of California has jurisdiction over this matter because it too is a federal court with subject-matter jurisdiction over Lanham Act claims.  *See* 15 U.S.C.§ 1121; 28 U.S.C. §§ 1331, 1338, 1367; *see also* Dkt. 1 ¶ 8.  Second, Trader Joe's principal place of business is in Monrovia, California, and it is subject to general jurisdiction there.  *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011).  Further, venue is proper because personal jurisdiction is proper.  28 U.S.C. § 1391(b)(1).  Third, Trader Joe's is amenable to process issuing out of the Central District of California.

### B.  The Balance of Convenience and Interest of Justice Strongly Favor Transfer

The second step entails assessing whether "the balance of convenience and the interest of justice strongly favor transfer."  *NLAIC*, 2013 WL 97718, at *11.  For this step, courts consider the private interests of the parties and public interest concerns.  *NOCO Co. v. ABC Deals, Inc.*,

No. 22-cv-01172-BMB, 2024 WL 519886, at *2 (N.D. Ohio Feb. 8, 2024).  Here, the balance of private and public concerns favors transfer.

### 1.    *The Parties' Private Interest Concerns Favor Transfer*

The parties' private interest concerns include:  "(1) the convenience to the parties; (2) the convenience of witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; ([5]) the cost of obtaining willing witnesses; [and] (6) the practical problems indicating where the case can be tried more expeditiously and inexpensively."  *NOCO*, 2024 WL 519886, at *2.  Taken together, these concerns favor transfer.

### a.    The Convenience of Witnesses Favors Transfer

"[T]he most important factor, and the factor most frequently mentioned, in passing on a motion to transfer under 28 U.S.C.[] § 1404(a) is the convenience of witnesses."  *Hutchins*, 2013 WL 3289128, at *7; *see also NLAIC*, 2013 WL 97718, at *13 ("The convenience of the witnesses, [] is often considered the most important factor.").  In particular, this factor focuses on non-party witnesses, and convenience of a party's employees "will not generally be given the same consideration as is given to other witnesses."  *Zimmer Enters., Inc. v. Atlandia Imports, Inc.*, 478 F. Supp. 2d 983, 991 (S.D. Ohio 2007).

Trader Joe's third-party producer is located in Los Angeles County.  Cahan Decl. ¶ 8.  Multiple employees from this producer would likely be called to testify in this case.  *Id.* ¶ 9.  For example, these employees are expected to be knowledgeable regarding the overall shape of the Crustless Sandwiches, the necessity of the "ridges" around the edge, and the impact of the production process on the overall shape of the sandwich.  *Id.*  Similarly, they are expected to testify about their involvement in developing the product, and therefore will provide critical testimony about how the product was developed, and how the production process played into the

product's development.  *Id.*  In addition, that producer will be asked to speak to the product

packaging.  *Id.*  Ultimately, Trader Joe's producer employs key third-party witnesses, because

the sandwich's overall shape, including the ridges around the edge, the domed middle, and the

nature of its corners, are all central issues regarding the alleged trade dress and design marks at

issue—and particularly whether functionality is driving their appearance.  *See* Dkt. 1 ¶¶ 13, 34;

*see also TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29 (2001) ("trade dress

protection may not be claimed for product features that are functional").  Understanding how

these elements bear on the production process and why they are chosen is therefore critical.

Courts have recognized that "one key witness may outweigh a great number of less

important witnesses."  *Zimmer*, 478 F. Supp. 2d at 992.  As Trader Joe's producer employs such

key witnesses, "the availability of process to compel [its] attendance, in addition to the fact that

[C.D. Cal.] is more convenient for [the producer] outweighs considerations of the convenience of

other (mainly employee) witnesses and the costs of obtaining willing witnesses."  *Id.*

> b.  Availability of Process to Compel Attendance of Unwilling
>     Witnesses Favors Transfer

Relatedly, because these "potential third-party witnesses would be outside the reach of

this Northern District's subpoena power," the case should be transferred to the Central District of

California.  *Hutchins*, 2013 WL 3289128 at \*7; *see also Zimmer*, 478 F. Supp. 2d at 992

(transferring case because third-party witnesses resided in different state); *NOCO*, 2024 WL

519886, at \*4 (this factor favored defendant because "at least one New York-based independent

non-party witness—[defendant's] supplier—would be called to testify, and [] compulsory

process would not be available for this witness in Ohio").  Therefore, not only does the

convenience of witnesses favor transfer, but the availability of process to compel attendance of

unwilling witnesses does as well.

c.      Ease of Access to Sources of Proof Favors Transfer

Additionally, although "the convenience of documentary evidence receives only minor weight," the production of Trader Joe's and Smucker's respective sandwich products is relevant to the litigation.  *NOCO*, 2024 WL 519886, at *4.  It is possible that in-person visits to the parties' production facilities will be necessary, at least by the parties' experts, to assess the functionality of the aspects that Smucker pleads as its trademarks.  Trader Joe's crustless sandwiches are produced in Los Angeles County, in the Central District of California.  Cahan Decl. ¶ 8.  Smucker's manufacturing plants for its Uncrustables products, on the other hand, are located in Colorado, Alabama, and Kentucky—not in Ohio.  *See* Dkt. 1 ¶ 30.  Because transferring the matter to California would reduce the overall travel burden to the parties' production facilities, this factor favors transfer.

d.      The Convenience of the Parties Is, At Least, Neutral

The convenience of the parties themselves favors neither party because it would be most convenient for Trader Joe's to litigate in California, and it would likely be most convenient for Smucker to litigate in Ohio, where it chose to file suit.  Because "employees from either [company] are going to have to travel to testify, which will cause both financial and familial hardships," this factor is neutral.  *Zimmer*, 478 F. Supp. 2d at 991.

e.      Plaintiff's Choice of Forum Is Not Determinative

Finally, although Plaintiff's choice of forum carries weight, it is "not determinative," and is "merely one of the relevant factors in the § 1404(a) analysis."  *Hutchins*, 2013 WL 3289128, at *7.  Further, "where the forum has no connection with the matter in controversy, the plaintiff's choice of forum is entitled to significantly less weight."  *NOCO*, 2024 WL 519886, at *3.  To assess a claim's connection to a forum, "courts look to the location of the decision-making process that gave rise to the action, any ensuing activity, and its impacts."  *Id.*

*NOCO* is instructive.  There, the plaintiff, located in Ohio, alleged that the defendant, located in New York, was infringing its intellectual property rights by selling "NOCO-branded battery chargers, to consumers via third party websites, such as Amazon and Wal-Mart," including to consumers in Ohio.  *Id.* at *1.  The court explained that "NOCO's complaint [did] not contain specific allegations locating the action in Ohio," such as "any Ohio consumers who were harmed by the material differences in products."  *Id.* at *3.  Since the matter's "locus" was not Ohio, "NOCO's forum choice receive[d] less deference."  *Id.*

Here, the complaint "does not contain specific allegations locating the action in Ohio, nor has [Smucker] included documentary evidence in support of these allegations."  *Id.*  Trader Joe's created its Crustless Sandwiches in California, where they are produced and where Trader Joe's works with its distribution partner to ship the product across the country.  Cahan Decl. ¶¶ 8-10.  Trader Joe's, together with its wholly-owned subsidiary, operates just seven stores in the entire state of Ohio, and only three in the Northern District, but operates over 620 stores throughout the United States.  *Id.* ¶ 5.  Smucker's Uncrustables sandwiches are sold in "thousands of [third-party] retail stores across the country."  Dkt. 1 ¶ 27.  Thus, "[t]he matter's locus is not clearly Ohio," and Smucker's choice of forum is not entitled to "substantial consideration."  *NOCO*, 2024 WL 519886, at *3.

### 2.  *Public Interest Concerns Are Neutral Or Slightly Favor Transfer*

The public interest concerns relevant to a motion for transfer are:  "(i) the enforceability of the judgment; (ii) practical considerations affecting trial management; (iii) docket congestion; (iv) the local interest in deciding local controversies at home; (v) the public policies of the fora; and (vi) the familiarity of the trial judge with the applicable state law."  *NOCO*, 2024 WL 519886, at *2.  Here, the public interest concerns are neutral or slightly favor transfer.

***First***, with respect to docket congestion, docket congestion on a per judge basis and time

18

to resolution are slightly better in the Central District of California.  The chart below estimates that the Northern District of Ohio has more cases pending per judge, and a higher average time to disposition and trial than the Central District of California.

| Metric | N.D. Ohio | C.D. Cal. |
|---|---|---|
| Number of cases currently pending | 8,129 | 15,159 |
| Number of cases currently pending per judge | 739 | 541 |
| Number of civil filings currently pending per judge | 355 | 634 |
| Average time to disposition (civil, median months) | 7.1 | 3.9 |
| Average time to trial (civil, median months) | 41.5 | 27.1 |

(*See U.S. District Courts - Federal Court Management Statistics–Comparison Within Circuit (Sept. 30, 2025)*, United States Courts, uscourts.gov/sites/default/files/document/fcms_na_distcomparison0930_2025.pdf)

In cases like this one, when both the number of cases pending per judge and the average time to disposition are lower in the same district, the interest of judicial economy slightly favors transfer. *Cf. Zimmer*, 478 F. Supp. 2d at 992-93 (factor neutral or favoring transfer where volume of cases was higher but time to disposition was faster in transferee district).  Further, Smucker has "an interest in resolving this matter expeditiously" because it claims that Trader Joe's activities are causing "irreparable injury" if Trader Joe's "is not restrained and enjoined by the Court."  *Id.* at 993; Dkt. 1 ¶ 51.  Therefore, Smucker "would be better served by transferring venue to the [Central District of California], where the time from filing to disposition is shorter."  *Zimmer*, 478 F. Supp. 2d at 993.

**Second**, although "there is a legitimate interest in allowing the court that is most familiar with the applicable law to resolve the dispute," that factor is neutral here because "this case's law is not unique or difficult."  *NOCO*, 2024 WL 519886 at *4.  This factor only weighs towards transfer when another state's controlling law is "unclear, unsettled, [and] difficult."  *Id.* at *5. Here, "[t]he Ohio Deceptive Trade Practices [A]ct is substantially similar to the Lanham Act,

19

and courts have stated that cases interpreting the Lanham Act are relevant to analysis of Ohio Deceptive Practices Act claims." *Id.* at *4.  Therefore, a California court "could competently apply the Ohio . . . laws relevant to this action," and this factor is neutral.  *Id.*

**Third**, the remaining public interest factors include "(i) the enforceability of the judgment; (ii) practical considerations affecting trial management; . . . (iv) the local interest in deciding local controversies at home; [and] (v) the public policies of the fora." *Id.* at *2.  These factors are also neutral.  A judgment from Ohio or California will be similarly enforceable, and there are no serious considerations affecting trial management at this stage.  Likewise, because the parties are registered and/or operate in California and Ohio, "[b]oth [California] and Ohio would possess a strong interest in monitoring businesses incorporated within their respective borders," and both state's public policies would be affected.  *Hutchins*, 2013 WL 3289128, at *8.  Accordingly, the public interest factors are, on the whole, neutral or slightly favor transfer.

Indeed, no real rationale exists to burden this Court's docket with a suit that concerns a California-based party, a California-based producer, and California-based evidence.  To the contrary, taken together, the private and public interest considerations support transfer of this case under 28 U.S.C. § 1404(a).

## VI.    CONCLUSION

For the above reasons, Trader Joe's respectfully requests that the Court dismiss with prejudice Smucker's third cause of action for dilution, and transfer this case to the Central District of California.

Dated:  January 9, 2026

Respectfully submitted,

*/s/ Jennifer L. Barry*
Jennifer L. Barry (228066)
LATHAM & WATKINS LLP
12670 High Bluff Drive
San Diego, CA 92130
(858) 523-5400 / (858) 523-5450 Fax
*jennifer.barry@lw.com*

Laura R. Washington (admitted *pro hac vice*)
LATHAM & WATKINS LLP
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
(424) 653-5500 / (424) 653-5501 Fax
*laura.washington@lw.com*

Kevin T. Shook (0073718)
FBT GIBBONS LLP
10 West Broad Street, Suite 2300
Columbus, OH 43215-3484
(614) 464-1211 / (614) 464-1737 Fax
*kshook@fbtgibbons.com*

*Attorneys for Defendant*
Trader Joe's Company

## CERTIFICATION OF COMPLIANCE

I, Jennifer L. Barry, certify that this case has not been assigned to a track pursuant to Local Rule 16.3.  I certify that the Memorandum of Law in Support of Defendant Trade Joe's Company's Motion to Dismiss and/or to Transfer Venue complies with the page limitation set forth in Local Rule 7.1(f) for dispositive motions of unassigned cases.

*/s/ Jennifer L. Barry*
Jennifer L. Barry

22