**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **THE J.M. SMUCKER COMPANY**, an Ohio Corporation | ) ) ) | |
| Plaintiff, | ) ) | Case No. 5:25-cv-02181-JRA |
| v. | ) ) | Judge John R. Adams |
| **TRADER JOE'S COMPANY**, a California Corporation | ) ) ) | **ORAL ARGUMENT REQUESTED** |
| Defendant. | ) | |

**REPLY IN SUPPORT OF DEFENDANT TRADER JOE'S COMPANY'S**
**MOTION TO DISMISS AND/OR TO TRANSFER VENUE**

# <u>TABLE OF CONTENTS</u>

**Page**

I.    Summary of Argument ....................................................................................................2

II.    Smucker Fails To Identify Non-Conclusory Allegations that Support its Claim to Fame......................................................................................................................................3

    A.    Smucker Has Not Alleged That the Duration, Extent, and Reach of the Uncrustables Design Marks Show Fame .................................................................4

    B.    Smucker's Allegations Regarding the Amount, Volume, and Extent of Sales Are Insufficient to Show Fame................................................................8

    C.    Smucker Fails to Allege Sufficient Actual Recognition of the Uncrustables Design Marks ...............................................................................10

    D.    Smucker's Federal Registrations Are Not Enough to Show Fame......................11

    E.    Smucker Fails to Allege Fame As to *Each* Asserted Mark .................................12

III.    The Balance of Factors Strongly Weighs in Favor of Transfer .........................................14

    A.    The Parties' Private Interest Concerns Favor Transfer..........................................14

    B.    Public Interest Concerns Do Not "Weigh Against" Transfer ...............................17

IV.    Conclusion .........................................................................................................................18

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Abbott Lab'ys v. Revitalyte LLC,*
  744 F. Supp. 3d 894 (D. Minn. 2024) .........................................................................9

*Am. Eagle Outfitters, Inc. v. Retail Royalty Co.,*
  457 F. Supp. 2d 474 (S.D.N.Y. 2006) ........................................................................16

*Arcsoft, Inc. v. Cyberlink Corp.,*
  153 F. Supp. 3d 1057 (N.D. Cal. 2015) .....................................................................11

*Bacik v. Peek,*
  888 F. Supp. 1405 (N.D. Ohio 1993) .........................................................................15

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ...............................................................................................3, 11

*Conley v. Gibson,*
  355 U.S. 41 (1957) .......................................................................................................3

*Culy Constr. & Excavating, Inc. v. Laney Directional Drilling Co.,*
  No. 12-cv-4, 2012 WL 12942602 (S.D. Ohio Aug. 13, 2012) ..................................13

*Deus ex Machina Motorcycles Pty. Ltd. v. Metro-Goldwyn-Mayer Inc.,*
  No. 20-cv-4822, 2020 WL 6875178 (C.D. Cal. Oct. 23, 2020) ..................................9

*Dowling v. Richardson-Merrell, Inc.,*
  727 F.2d 608 (6th Cir. 1984) .....................................................................................14

*FenF, LLC v. Tamilees Emporium LLC,*
  No. 24-cv-11987, 2025 WL 3896859 (E.D. Mich. Oct. 30, 2025) ...................4, 12, 13

*Handel's Enters., Inc. v. Schulenburg,*
  No. 18-cv-508 (BYP), 2018 WL 3097416 (N.D. Ohio June 22, 2018) ......................18

*Hutchins v. T1 Tequila, LLC,*
  No. 11-cv-557 (CAB), 2013 WL 3289128 (N.D. Ohio June 28, 2013) ...........15, 17, 18

*Luv N' Care, Ltd. v. Regent Baby Prods. Corp.,*
  841 F. Supp. 2d 753 (S.D.N.Y. 2012) ..............................................................9, 10, 11

*Maxwell v. Corr. Med. Servs.,*
  538 Fed. Appx. 682 (6th Cir. 2013) .............................................................................3

ii

*Metro Sanitation, L.L.C. v. C & R Maint., Inc.*,
  No. 05-cv-70673, 2005 WL 1861931 (E.D. Mich. Aug. 4, 2005)..........................11

*Mike Vaughn Custom Sports, Inc. v. Piku*,
  15 F. Supp. 3d 735 (E.D. Mich. 2014)....................................................................11

*MZ Wallace Inc. v. Fuller*,
  No. 18-cv-2265, 2018 WL 4007645 (S.D.N.Y. Aug. 22, 2018)..............................7

*Nat'l Inst. for Strategic Tech. Acquisition & Commercialization v. Nissan N. Am.,
  Inc.*,
  No. 10-cv-1346, 2011 WL 915392 (D. Kan. Mar. 15, 2011) ..................................15

*Nationwide Life & Annuity Ins. Co. v. Golden*,
  No. 12-cv-213, 2013 WL 97718 (S.D. Ohio Jan. 7, 2013), *R&R adopted*, 2013
  WL 361060 (S.D. Ohio Jan. 29, 2013) ....................................................................14

*NOCO Co. v. ABC Deals, Inc.*,
  No. 22-cv-01172 (BMB), 2024 WL 519886 (N.D. Ohio Feb. 8, 2024) ........................ *passim*

*O-Line Acad., LLC v. NBC Universal, Inc.*,
  No. 16-cv-90 (PAG), 2016 WL 2997587 (N.D. Ohio May 25, 2016)....................16

*Parts.com, LLC v. Yahoo! Inc.*,
  996 F. Supp. 2d 933 (S.D. Cal. 2013)......................................................................8

*Reed Elsevier, Inc. v. TheLaw.net Corp.*,
  269 F. Supp. 2d 942 (S.D. Ohio 2003) ....................................................................11

*Republic Steel v. Beemac, Inc.*,
  No. 21-cv-00103 (DAR), 2022 WL 2872295 (N.D. Ohio July 21, 2022)...............18

*Roadget Bus. PTE. Ltd. v. PDD Holdings Inc.*,
  No. 24-cv-2402, 2026 WL 44864 (D.D.C. Jan. 7, 2026)..............................5, 11, 12

*Scotts Co. LLC v. SBM Life Science Corp.*,
  749 F. Supp. 3d 865 (S.D. Ohio 2024) .............................................................6, 9, 10

*TrueNorth Companies, L.C. v. TruNorth Warranty Plans of N. Am., LLC*,
  292 F. Supp. 3d 864 (N.D. Iowa 2018).......................................................4, 6, 8, 13

*Urb. Grp. Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc.*,
  No. 12-cv-3599, 2013 WL 866867 (S.D.N.Y. Mar. 8, 2013)..................................7

*Vaughn v. Ind. & Ohio Rwy. Co.*,
  No. 07-cv-3635 (JGC), 2008 WL 1767075 (N.D. Ohio Apr. 14, 2008)..................15

iii

*Walker Wear LLC v. Off-White LLC*,
   624 F. Supp. 3d 424 (S.D.N.Y. 2022) ..........................................................................6

*Williams v. CitiMortgage, Inc.*,
   498 Fed. Appx. 532 (6th Cir. 2012) ...........................................................................5

*Wonderful Co. LLC v. Nut Cravings Inc.*,
   No. 21-cv-03960, 2022 WL 4585344 (S.D.N.Y. Sept. 29, 2022) .......................5, 7

*Zimmer Enters., Inc. v. Atlandia Imports, Inc.*,
   478 F. Supp. 2d 983 (S.D. Ohio 2007) .....................................................................16

## STATUTES

28 U.S.C. § 1404 ...............................................................................................................1

## RULES

Fed. R. Civ. P. 12(b)(6) .....................................................................................................1

iv

US-DOCS\168250770.1

## <u>STATEMENT OF ISSUES TO BE DECIDED</u>

Trader Joe's Company ("Trader Joe's") moves to dismiss The J.M. Smucker Company's ("Smucker") claim for trademark dilution and/or transfer the Complaint in its entirety to the United States District Court for the Central District of California.

*Issue One:*  Whether the Court should dismiss Smucker's claim for trademark dilution under Federal Rule of Civil Procedure 12(b)(6) with prejudice because Smucker has failed to meet the high bar required to plead fame for its Uncrustables Design Marks and has not pled fame for each of the Uncrustables Design Marks.

*Issue Two:*  Whether the Court should transfer the Complaint under 28 U.S.C. § 1404 to the United States District Court for the Central District of California because the balance of convenience, including the convenience of third-party witnesses, and the interest of justice strongly favor transfer.

## I.     SUMMARY OF ARGUMENT

Smucker's Opposition confirms what Trader Joe's Motion demonstrated: Smucker cannot meet the demanding pleading requirements for a federal trademark dilution claim, and Ohio is not the appropriate forum for this dispute.

Rather than address the Complaint's deficiencies, Smucker retreats to a pleading standard the Supreme Court retired nearly two decades ago.  The dilution claim fails at the threshold because Smucker has not plausibly alleged that its Uncrustables Design Marks are "famous" within the meaning of the Trademark Dilution Revision Act (TDRA), and under today's pleading standards.  The fame requirement is "purposely rigorous" because federal dilution protection is reserved for a very limited category of marks.  Smucker's Complaint conflates the "Uncrustables brand" with the specific design marks at issue, fails to provide any geographic detail regarding advertising or sales, and lumps together four distinct marks—including a cartoon character allegedly introduced only in 2024—without alleging facts supporting fame for any individual mark.  Based on Smucker's logic, it could launch a brand new cartoon character tomorrow, use it in an Uncrustables ad, and claim that this new character has federal-dilution-level fame, simply because the Uncrustables ***brand*** is purportedly on its way to being worth a billion dollars.  Dkt. 1 ¶ 30.  This is not how trademark dilution works.  Though Smucker need not prove fame at this stage, it must at minimum allege facts demonstrating that fame is not only possible, but plausible, for each of the specific marks at issue in this case.  It cannot.

The case should also be transferred to the Central District of California because the balance of convenience and the interests of justice favor transfer.  The convenience of non-party witnesses—the most important factor in the transfer analysis—strongly favors California.  Further, because Smucker's Complaint contains no specific allegations locating this action in Ohio, Smucker's choice of this forum deserves diminished deference.  The remaining transfer

factors either favor California or are neutral, so this case should be transferred to the Central District of California.

## II.     SMUCKER FAILS TO IDENTIFY NON-CONCLUSORY ALLEGATIONS THAT SUPPORT ITS CLAIM TO FAME

As a gating issue, Smucker argues that Trader Joe's "conflates *pleading standards* with *proof standards*."  Dkt. 11 at 6 (emphasis original).[1]  Yet it is Smucker that invokes a pleading standard that the Supreme Court has characterized as one "best forgotten as an incomplete, negative gloss," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007), and that improperly retreats to attorney argument about what "the evidence will show," Dkt. 11 at 1, rather than well-pled factual allegations.  *See* Dkt. 11 at 1, 5.

*First*, Smucker recites that "[b]ecause of the liberal pleading standard, '[a] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle the plaintiff to relief.'"  Dkt. 11 at 5.  That standard, which originated in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), is no longer good law and has not been for nearly two decades.  *Twombly*, 550 U.S. at 562-63 ("We could go on, but there is no need to pile up further citations to show that *Conley*'s 'no set of facts' language has been questioned, criticized, and explained away long enough."); *see also Maxwell v. Corr. Med. Servs.*, 538 Fed. Appx. 682, 692 (6th Cir. 2013) ("The no-set-of-facts standard, however, was retired by the Supreme Court in *Twombly*.").

*Second*, Smucker invokes an amalgamation of references to (i) what the "evidence [ostensibly] will show" regarding the purported fame of its design marks, (ii) allegations about the Uncrustables **name and brand** (which are utterly distinct from the design marks at issue in

---

[1] All emphasis is added and internal quotations and citations omitted, unless otherwise noted.

this suit), (iii) conclusory allegations about fame, and (iv) citations to case law applying a now-outdated version of the TDRA.  *See generally* Dkt. 11.  Particularly when looking at whether a federal trademark dilution plaintiff has sufficiently pled fame, this is not enough.  "The fame element is purposely rigorous because section 1125(c) is intended to protect a very specific type of trademark and trade dress."  *TrueNorth Companies, L.C. v. TruNorth Warranty Plans of N. Am., LLC*, 292 F. Supp. 3d 864, 873 (N.D. Iowa 2018); *see also FenF, LLC v. Tamilees Emporium LLC*, No. 24-cv-11987, 2025 WL 3896859, at *4 (E.D. Mich. Oct. 30, 2025) ("Even extremely popular marks can fail to qualify as famous.").  "While [Smucker] need not prove that its mark is famous at this juncture, it must allege facts demonstrating that fame is not only possible, but plausible."  *TrueNorth*, 292 F. Supp. 3d at 873.

Against this backdrop, Smucker's conclusory and contradictory allegations do not meet the present-day standard, and each of its arguments to the contrary cannot survive scrutiny.

### A.    Smucker Has Not Alleged That the Duration, Extent, and Reach of the Uncrustables Design Marks Show Fame

Smucker first argues that its Complaint "contains detailed allegations concerning the duration, extent, and reach of advertising and publicity of the Uncrustables Design Marks." Dkt. 11 at 7.  But the scant support it provides for that argument fails.

***First***, Smucker asserts that fame is sufficiently pled because it alleges that the Uncrustables Design Marks have been continuously used since 1996.  *Id.*  These allegations, however, only apply to two of Smucker's four alleged marks, as the other two marks did not even exist in 1996.  Dkt. 1 ¶¶ 12-13, 16, 19, 21.  Indeed, by Smucker's own admission, one of its marks—the cartoon character that Smucker barely musters any specific argument regarding at all—dates back only to 2024.  *See id.* ¶ 21.  Simply put, "[a] Court need not feel constrained to

4

accept as truth conflicting pleadings . . . that are contradicted . . . by statements in the complaint itself." *Williams v. CitiMortgage, Inc.*, 498 Fed. Appx. 532, 536 (6th Cir. 2012).

**Second**, Smucker argues that it has alleged investment of "over a billion dollars in the last 20 years" into its "trademark rights in and to the design of a round crustless sandwich." Dkt. 11 at 7-8.  This argument ignores the Complaint itself.  In reality, Smucker alleges that its investment was in its "trademark rights" **and** its "Uncrustables brand."  Dkt. 1 ¶ 12.  To be clear, the "Uncrustables brand," i.e., the Uncrustables **name**, is **_not_** at issue in this case.  Instead, this case concerns only the <u>shape</u> of the Uncrustables sandwiches (three claimed marks), and a cartoon character shaped like that sandwich (the fourth claimed mark).  *See* Dkt. 1 ¶¶ 13-23. Trader Joe's is not accused of infringing *any* other trademark, beyond those four collective marks, which generally go to the trade dress of Smucker's sandwiches, i.e., their *shape*.  *Id.* ¶¶ 41-84.  Fatally, Smucker's allegations are "insufficient to indicate" that Smucker's advertising "stressed or emphasized the alleged trade dress," as opposed to the brand itself.  *Wonderful Co. LLC v. Nut Cravings Inc.*, No. 21-cv-03960, 2022 WL 4585344, at *3 (S.D.N.Y. Sept. 29, 2022) (allegations that "the WONDERFUL trade dress is used 'as the centrepiece [sic] for [TWC's] marketing'" are "insufficient").  Courts routinely reject attempts—like Smucker's—to conflate allegations regarding a *brand* with allegations regarding the "*trademarks . . . in suit*."  *Roadget Bus. PTE. Ltd. v. PDD Holdings Inc.*, No. 24-cv-2402, 2026 WL 44864, at *14 (D.D.C. Jan. 7, 2026); *see, e.g.*, *Wonderful*, 2022 WL 4585344, at *5 (rejecting dilution claim where Plaintiff did "not plausibly allege that the trade dress itself—as opposed to the WONDERFUL products or brand—has achieved the degree of recognition in the general population to qualify it as a famous mark").

**Third**, Smucker claims that it has alleged use of the Uncrustables Design Marks online and in advertisements, and spent "extensive time and effort promoting" and "substantial investment in" the Uncrustables Design Marks.  Dkt. 11 at 8.  As to the former, Smucker boasts that its Complaint includes "examples showing the reach of such advertising," citing Paragraph 26.  *Id.*  If anything, Paragraph 26 **undercuts** Smucker's claim to fame because it shows the "reach" of two social media posts that both reflect scant engagement: an Uncrustables Facebook post with only 115 likes and 2 comments, and an Instagram post with 3,937 likes.[2]  Dkt. 1 ¶ 26.  As to the latter, Smucker's vague references to "time," "effort," and "investment" are exactly the type of barebones allegations that courts regularly reject as alleging fame.  *See, e.g.*, *Walker Wear LLC v. Off-White LLC*, 624 F. Supp. 3d 424, 431 (S.D.N.Y. 2022) (allegation that party "invested substantial time and money" was too conclusory to support fame).  Further, Smucker's general allegations regarding its advertising provide no "details regarding the extent or geographic reach of its advertising and publicity."  *TrueNorth*, 292 F. Supp. 3d at 873.

Nor does Smucker's invocation of *Scotts*, or its attempts to distinguish Trader Joe's cited authorities, change the analysis.  Dkt. 11 at 8.  The plaintiff in *Scotts* alleged that it "promot[ed] its products under the Red Marks on a nationwide basis."  *Scotts Co. LLC v. SBM Life Science Corp.*, 749 F. Supp. 3d 865, 874 (S.D. Ohio 2024).  The advertising expenditure was expressly attributed to promoting the marks, not merely the products or brand.  *Id.*  Smucker, in contrast, provides scant detail about where its advertisements appear.  *See generally* Dkt. 1.  It also alleges that it has "invested over a billion dollars to develop the goodwill associated with its **Uncrustables brand** and [its] trademark rights."  *Id.* ¶ 12.  This language conflates brand

---

[2] Smucker links to two other social media posts, but the screenshots depicted in the Complaint do not reflect the "reach" of those posts.  One link appears broken, and the other confirms similarly low—or at least not "fame"-level—engagement.  *See* Dkt. 1 ¶ 26.

development with mark development, and courts have found that "allegations of extensive overall sales and advertising for a product line are insufficient to unilaterally support an assertion that the trade dress of those products has achieved the widespread renown necessary to establish fame." *Urb. Grp. Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc.*, No. 12-cv-3599, 2013 WL 866867, at *6 (S.D.N.Y. Mar. 8, 2013).

Smucker also attempts to distinguish Trader Joe's cited cases with the argument that "[u]nlike the allegations in this case, those plaintiffs' fame allegations related primarily to branded products other than the trademarks at issue." Dkt. 11 at 8. But that is precisely the problem with Smucker's Complaint. *Compare* Dkt. 1 ¶¶ 12 ("For at least the last 20 years, Smucker has invested over a billion dollars to develop the goodwill associated with its **Uncrustables brand** and [its] trademark rights"), 25 ("Since 1996, Smucker's Uncrustables sandwiches have gained widespread popularity with many types of consumers, but are particularly helpful for parents preparing lunches"), 30 ("As a direct result of significant time and investment, Smucker's Uncrustables branded products have grown over the past 20 years and the Uncrustables products are fast on their way to being a $1 billion brand."), 32; *with Wonderful*, 2022 WL 4585344, at *3 and *MZ Wallace Inc. v. Fuller*, No. 18-cv-2265, 2018 WL 4007645, at *3 (S.D.N.Y. Aug. 22, 2018) ("MZ Wallace has expended millions of dollars and significant effort in advertising and promoting products bearing the Trade Dress" and advertising examples "prominently display the MZ Wallace name on top of" the trade dress).

Smucker has therefore failed to allege that the duration, extent, and reach of advertising and publicity of the Uncrustables Design Marks show fame.

7

### B.    Smucker's Allegations Regarding the Amount, Volume, and Extent of Sales Are Insufficient to Show Fame

Smucker also claims that its Complaint contains "detailed allegations concerning the amount, volume, and extent of product sales under the Uncrustables Design Marks." Dkt. 11 at 9. Not so.

Smucker's allegation that it "produces 1.5 billion Uncrustables sandwiches annually" (Dkt. 1 ¶ 30) "alleges nothing regarding sales." *Parts.com, LLC v. Yahoo! Inc.*, 996 F. Supp. 2d 933, 941 (S.D. Cal. 2013). Although Smucker tries to distinguish *Parts.com*, like the plaintiff there, Smucker fails to "say how many [sandwiches] it sells in any given fiscal year, what its annual sales revenue is, or where those sales are made." *Id.* Instead, it alleges that it **produces**, not sells, 1.5 billion sandwiches a year. Dkt. 1 ¶ 30.

Smucker also goes on to claim that "the Uncrustables products" are purportedly on their "way to being a $1 billion brand." Dkt. 1 ¶ 30. This allegation provides no current specifics as to its product sales, nor conveys anything regarding the extent of consumer recognition of the "shape" of the design marks in suit. *Id.* ¶¶ 12, 30. Indeed, following Smucker's logic, a would-be dilution plaintiff could claim fame in the shape of a hamburger, if it were associated with a name brand like McDonalds. Or, perhaps more telling, Smucker could launch a new Uncrustables ad tomorrow, with a brand new cartoon character, and claim that this new character has federal-dilution-level fame, simply because Uncrustables, **the brand**, is purportedly on the "way to being a $1 billion brand." *Id.* ¶ 30.

Beyond those allegations and claiming that its products are "sold in thousands of retail stores across the country," (*id.* ¶ 27), Smucker "provides no further details regarding the amount, volume, and geographic extent of sales of goods or services offered under its mark." *TrueNorth*, 292 F. Supp. 3d at 874. That failure is fatal to a dilution claim, because a dilution plaintiff

cannot rely on solely vague and conclusory allegations regarding its sales.  For example, in *Deus ex Machina*, the court explained that the plaintiff's allegations were "conclusory" because it did not "allege how much of its apparel it sells . . . in any given fiscal year, what its annual sales revenue is, or where those sales occur."  *Deus ex Machina Motorcycles Pty. Ltd. v. Metro-Goldwyn-Mayer Inc.*, No. 20-cv-4822, 2020 WL 6875178, at *9 (C.D. Cal. Oct. 23, 2020). Further compounding matters, Smucker's allegations contain no geographic limitations or descriptors regarding its actual sales (which go unmentioned to begin with).  As *Deus ex Machina* recognizes, that too presents a serious problem at this stage.  *Id.*

Next, Smucker argues that its Complaint "sufficiently ties the success of Smucker's Uncrustables products to its long use of the Uncrustables Design Marks," and cites to *Scotts* and *Abbott* for support.  Dkt. 11 at 9-10.  *Scotts* is once again distinguishable because plaintiff alleged that it sold "its ORTHO Products **under the Red Mark** throughout the United States," and "that it has made hundreds of millions of dollars in sales of its products **under the Red Marks** throughout the United States."  749 F. Supp. 3d at 875.  Smucker does not allege that its sales took place "under" the four Uncrustables Design Marks, nor do its allegations contain geographic limitations or descriptors.  Similarly, the plaintiff in *Abbott* alleged that "around 5.8 percent of the U.S. population purchased at least one Pedialyte-branded Product" (all of which have "used substantially the same trade dress since the 1980s").  *Abbott Lab'ys v. Revitalyte LLC*, 744 F. Supp. 3d 894, 902 (D. Minn. 2024).  Smucker makes no such specific claims.

In all, Smucker's scant allegations even arguably regarding sales "refer[] generally to [the Uncrustables products] as a whole, not the amount, volume, and geographic extent of sales of goods or services offered under the marks in suit."  *Luv N' Care, Ltd. v. Regent Baby Prods.*

9

*Corp.*, 841 F. Supp. 2d 753, 757 (S.D.N.Y. 2012) (cleaned up).  Thus, Smucker's allegations do not support its argument that the Uncrustables Design Marks are famous.  *Id.*

### C. Smucker Fails to Allege Sufficient Actual Recognition of the Uncrustables Design Marks

Smucker next argues that its Complaint "contains detailed allegations concerning the actual recognition of the Uncrustables Design Marks."  Dkt. 11 at 10.  This is false.

Smucker again compares its allegations to those in *Scotts*, and argues that the allegations are "similar."  *Id.* at 10-11.  In *Scotts*, the plaintiff alleged that because of its substantial investment in "marketing ORTHO Products under the Red Mark," the goods were established in consumers' minds "as high-quality goods offered by Scotts."  749 F. Supp. 3d at 875.  These allegations referred to a *single* mark, and explained where it was recognized.  *Id.*  Smucker, on the other hand, has generally alleged that because of its "time and effort promoting the Uncrustables Design Marks, Smucker's customers, its competitors and the consuming public have come to associate the high quality sandwiches offered by Smucker with its use of the Uncrustables Design Marks."  Dkt. 1 ¶ 31; *see also id.* ¶ 32 ("Smucker's Uncrustables sandwiches have come to be widely and favorably recognized and celebrated by members of the consuming public, and as a direct result of Smucker's substantial investment in and to the Uncrustables Design Marks, they have become famous trademarks.")  These general allegations that the Uncrustables Design Marks "have all become widely known . . . and associated with [Smucker] . . . are conclusions, lacking factual references to the trademarks and trade dress in suit, and therefore do not support the allegation that the marks in suit are famous."  *Luv N' Care*,

841 F. Supp. 2d at 757; *see also Roadget*, 2026 WL 44864, at *14  ("a plaintiff cannot simply allege that it has attained widespread and favorable recognition").[3]

Smucker also argues that because "the Complaint expressly alleges that the Uncrustables Design Marks are famous," it should "survive a motion to dismiss."  Dkt. 11 at 11.  Both cases that Smucker cites for support, however, are from before either *Twombly* or *Iqbal*, and before the TDRA went into effect.  *Reed Elsevier, Inc. v. TheLaw.net Corp.*, 269 F. Supp. 2d 942, 946 (S.D. Ohio 2003) (claim should only be dismissed if "plaintiff can prove no set of facts in support of his claim that would entitle him to relief"); *Metro Sanitation, L.L.C. v. C & R Maint., Inc.*, No. 05-cv-70673, 2005 WL 1861931, at *2 (E.D. Mich. Aug. 4, 2005) (similar).  As explained above, the Supreme Court retired the "no set of facts" standard nearly twenty years ago.  *See Twombly*, 550 U.S. at 562-63.  Smucker's allegations therefore fail.

### D.    Smucker's Federal Registrations Are Not Enough to Show Fame

Smucker also retreats to its federal registrations as purported evidence of fame.  Dkt. 11 at 11-12.  A federal registration is insufficient to show fame.  "As another court put it, '[o]ne cannot logically infer fame from the fact that a mark is one of the millions on the Federal Register.'"  *Roadget*, 2026 WL 44864, at *15; *see also Arcsoft, Inc. v. Cyberlink Corp.*, 153 F.

---

[3] Smucker has also failed to allege that the Uncrustables Design Marks are recognized "by the general consuming public of the United States."  *Luv N' Care*, 841 F. Supp. 2d at 759; *see* Dkt. 10-1 at 11-12.  This requirement is a basic tenet for a federal dilution claim.  *See Mike Vaughn Custom Sports, Inc. v. Piku*, 15 F. Supp. 3d 735, 748 (E.D. Mich. 2014) ("There is no cause of action for trade dress dilution for products based on niche fame, i.e. fame limited to a particular channel of trade, segment of industry or service, or geographic region.").  Neither Smucker's fleeting and conclusory allegation that its sandwiches are "recognized" in "school cafeterias" and "the National Football League" (Dkt. 1 ¶ 30) nor its attorney argument that "sandwiches are . . . enjoyed by all types of consumers" (Dkt. 11 at 14) suffice to show the requisite level of general nationwide awareness for a federal dilution claim.

Supp. 3d 1057, 1065-67 (N.D. Cal. 2015) (plaintiff failed to allege fame despite federal registration).

Trader Joe's position is not that "Smucker's character design mark associated with Reg. No. 7,871,982 has not achieved fame because it was registered two years ago," as Smucker argues. Dkt. 11 at 11. Rather, and as discussed in further detail below, its position is that Smucker has failed to plead any facts particular to this mark that would qualify it for fame. Dkt. 10-1 at 12-13.

### E.  Smucker Fails to Allege Fame As to *Each* Asserted Mark

Smucker's dilution claim also falls woefully short because Smucker did not separately allege fame for each of the four separate marks. *See* Dkt. 11 at 14. Rather than meet this argument on the merits, Smucker responds—in a single paragraph—that (i) it is based on "unpublished, out-of-circuit decisions" and (ii) Smucker could (ostensibly) cure this pleading defect through amendment (how? Smucker does not explain). *Id.* Smucker's silence, and apparent willingness to amend, are telling.

Section 1125(c) of the Lanham Act provides a cause of action for dilution for "the owner of *a famous mark*," not a compilation or collection of marks. In line with that language, a growing body of courts have rejected dilution claims that "lump[]" marks together. *See, e.g.*, *Roadget*, 2026 WL 44864, at *13 n.8; Dkt. 10-1 at 12-13 (collecting cases). Smucker's only response to that authority is to dismiss it as "unpublished" and "out-of-circuit." Dkt. 11 at 14. Nowhere does Smucker actually legitimize its group pleading approach, because it cannot. Pleading fame collectively for a group of marks runs contrary to the federal dilution statute, which is reserved for only "[t]ruly famous marks [that] are few and far between." *FenF*, 2025 WL 3896859, at *4.

12

Indeed, Smucker's own pleadings exemplify the exact risk of pleading collective fame. Buried within the so-called "Uncrustables Design Marks," Smucker effectively claims that the below cartoon character, which was only allegedly introduced in 2024, can go toe-to-toe with the likes of "Barbie." Dkt. 1 ¶ 21.



Smucker offered no allegations supporting—*specifically*—the fame of this new character. *See generally* Dkt. 1. And in its opposition brief, the *only* response Smucker offers about this specific design is that its purported fame "should be reviewed after the close of discovery, not before it begins." Dkt. 11 at 11. This argument defies credulity. Courts have repeatedly noted the "rigor[]" of the fame requirement, and that would-be dilution plaintiffs must "allege facts demonstrating that fame is not only possible, but plausible." *TrueNorth*, 292 F. Supp. 3d at 871, 873. If a plaintiff (like Smucker) fails to individually address each design on which it bases its claim, there is no way to assess whether each is among those "[t]ruly famous marks [that] are few and far between." *FenF*, 2025 WL 3896859, at *4.

Smucker also asserts in passing that it could ostensibly cure its failure to plead fame as to each of the asserted marks individually via amendment. Dkt. 11 at 14. How would Smucker amend to address that deficiency? It unhelpfully doesn't say. And that failure to specify is fatal to its claim, as courts disfavor such bare "throwaway requests for amendment." *Culy Constr. & Excavating, Inc. v. Laney Directional Drilling Co.*, No. 12-cv-4, 2012 WL 12942602, at *1 (S.D. Ohio Aug. 13, 2012).

13

III.     **THE BALANCE OF FACTORS STRONGLY WEIGHS IN FAVOR OF TRANSFER**

This action should be transferred to the Central District of California.  Smucker does not deny that this action *could* have been brought in the Central District of California.  Accordingly, the only question is whether "the balance of convenience and the interest of justice strongly favor transfer."  *Nationwide Life & Annuity Ins. Co. v. Golden*, No. 12-cv-213, 2013 WL 97718, at *11 (S.D. Ohio Jan. 7, 2013), *R&R adopted*, 2013 WL 361060 (S.D. Ohio Jan. 29, 2013).  Trader Joe's has shown that they do.

**A.     The Parties' Private Interest Concerns Favor Transfer**

Despite Smucker's argument to the contrary, Trader Joe's has shown that, on the whole, the factors courts consider when assessing a motion to transfer venue strongly favor transfer.

**1.     *The Convenience of The Witnesses Strongly Favors Transfer***

Smucker argues that because Trader Joe's "has not specifically identified the names or titles of any of these alleged witnesses," this factor weighs against transfer.  Dkt. 11 at 16.  Smucker once again misstates the standard.  "[A] party is not required to specifically provide the names of witnesses to be used in an action to establish inconvenience, [rather] they must provide enough information to enable the court to balance the parties' interests."  *NOCO Co. v. ABC Deals, Inc.*, No. 22-cv-01172 (BMB), 2024 WL 519886, at *3 (N.D. Ohio Feb. 8, 2024); *see also Dowling v. Richardson-Merrell, Inc.*, 727 F.2d 608, 615 (6th Cir. 1984) (defendant not required to "detail all the witnesses likely to be used in a case in order to establish inconvenience.").

Here, Trader Joe's has explained that employees of its third-party product producer would likely be called to testify, and has generally explained what their testimony will cover.  Dkt. 10-1 at 15-16.  This stands in stark contrast to *Bacik* (relied upon by Smucker), where the

14

defendant merely stated, "[n]on-party witnesses reside in Colorado and are subject to the subpoena power of Colorado courts." *Bacik v. Peek*, 888 F. Supp. 1405, 1414 (N.D. Ohio 1993).

Smucker also argues that because its own "employee witnesses would need to travel to California, this factor weighs against transfer." Dkt. 11 at 17.  Smucker provides neither names, nor corresponding topics of testimony for such names, despite demanding this information from Trader Joe's.  *Id.*  Regardless, "the convenience of non-party witnesses, rather than employee witnesses . . . is the more important factor and is accorded greater weight."  *NOCO*, 2024 WL 519886, at *4.  Thus, the convenience of the witnesses, which Smucker's own authority recognizes as "the most important factor, and the factor most frequently mentioned, in passing on a motion to transfer," weighs strongly in favor of transfer.  *Bacik*, 888 F. Supp. at 1414.

## 2. *Availability of Process to Compel Attendance of Unwilling Witnesses Favors Transfer*

Smucker also argues that Trader Joe's "has not asserted that any of these witnesses would be unwilling to travel to Ohio." Dkt. 11 at 17.  But Smucker does not deny, nor can it, that these "third-party witnesses would be outside the reach of this Northern District's subpoena power." *Hutchins v. T1 Tequila*, *LLC*, No. 11-cv-557 (CAB), 2013 WL 3289128, at *7 (N.D. Ohio June 28, 2013); *see also NOCO*, 2024 WL 519886, at *4 (factor favored defendant because "compulsory process would not be available for [a third-party witness] witness," without explaining whether witness was willing to travel).

Further, Smucker argues that "Trader Joe's makes no effort to explain why depositions of the potential non-party witnesses would be inadequate." Dkt. 11 at 17.  Courts have recognized that "video is not a fully complete substitute for live testimony."  *Vaughn v. Ind. & Ohio Rwy. Co.*, No. 07-cv-3635 (JGC), 2008 WL 1767075, at *1 (N.D. Ohio Apr. 14, 2008); *see also Nat'l Inst. for Strategic Tech. Acquisition & Commercialization v. Nissan N. Am., Inc.*, No. 10-cv-

15

1346, 2011 WL 915392, at *3 (D. Kan. Mar. 15, 2011) ("it would be unfair to force [a party] to present a significant portion of their case by deposition").  Smucker apparently wants to force this incomplete and prejudicial substitute upon Trader Joe's.  This factor accordingly weighs in favor of transfer.  *See Zimmer Enters., Inc. v. Atlandia Imports, Inc.*, 478 F. Supp. 2d 983, 992 (S.D. Ohio 2007) (factor favored transfer where third-party witnesses resided in Colorado).

**3.      *The Location of Operative Facts and the Ease of Accessing Sources of Proof Both Favor Transfer***

Smucker also argues that "because Trader Joe's sells the accused products at its retail stores in this District, Ohio is the location of the operative facts," and cites to a single out-of-circuit case in support.  Dkt. 11 at 17-18 (citing *Am. Eagle Outfitters, Inc. v. Retail Royalty Co.*, 457 F. Supp. 2d 474, 477 (S.D.N.Y. 2006)).  Smucker, however, has not alleged any particular facts locating this cause of action in Ohio.  *See O-Line Acad., LLC v. NBC Universal, Inc.*, No. 16-cv-90 (PAG), 2016 WL 2997587, at *2 (N.D. Ohio May 25, 2016) (explaining in trademark action, "[a]lthough some of the allegedly infringing conduct occurred in this jurisdiction, it appears that the majority of the misconduct occurred in California" where defendant was located).  And as explained in Trader Joe's Motion, *NOCO* is particularly on point and instructive.  Dkt. 10-1 at 17-18.  There, because "NOCO's complaint [did] not contain specific allegations locating the action in Ohio," such as "any Ohio consumers who were harmed by the material differences in products," the court determined that the matter's locus was not Ohio.  2024 WL 519886, at *3.  Smucker's Complaint fares no better.  Accordingly, the location of operative facts is not Ohio.  *Id.*

Smucker then argues that the access to proof factor weighs against transfer in part because "Smucker has no production facility in California."  Dkt. 11 at 18.  Smucker does not have any production facility in Ohio either.  *See* Dkt. 1 ¶ 30.  Smucker presents no compelling

facts that would support any physical sources of proof being uniquely and immovably located in Ohio, and goes too far by saying that this factor weighs "against" transfer. Dkt. 11 at 18. Even accepting Smucker's argument that this possibility "does not amount to a strong showing that transfer is appropriate," this factor is, at least, neutral. *Id.*

### 4.  *Smucker's Choice of Forum is Not Entitled to "Substantial Weight"*

Smucker also argues that its "choice of forum strongly weighs against transfer." Dkt. 11 at 20. "[W]here the forum has no connection with the matter in controversy, the plaintiff's choice of forum is entitled to significantly less weight." *NOCO*, 2024 WL 519886, at *3. Smucker tries to distinguish *NOCO* by arguing that there, the defendant sold its goods "via third party websites," whereas here, Trader Joe's operates stores in Ohio. Dkt. 11 at 20. This is not enough to separate the two cases. The defendant in *NOCO* also had minor connections to Ohio, because it "solicited products from NOCO's Ohio authorized resellers, and then shipped unauthorized NOCO products to Ohio consumers." *NOCO*, 2024 WL 519886, at *3. This was insufficient to "locat[e] the action in Ohio." *Id.* Similarly, Trader Joe's sandwiches are produced in California, and sold nationwide. Dkt. 10-2 ¶¶ 5, 9. Accordingly, the "matter's locus is not clearly Ohio, as [Smucker] claims. Thus, [Smucker]'s forum choice receives less deference." *NOCO*, 2024 WL 519886, at *3.

Further, even if Smucker's choice of forum were entitled to substantial weight (it is not), Smucker's "choice of forum is not determinative, but is instead merely one of the relevant factors in the § 1404(a) analysis." *Hutchins*, 2013 WL 3289128, at *7.

### B.  Public Interest Concerns Do Not "Weigh Against" Transfer

Though Smucker argues that the "interests of justice factor weighs against transfer," its reasoning is unpersuasive. Dkt. 11 at 18. It cites *Republic Steel* to argue that "raw figures comparing caseloads are entitled to little weight," (Dkt. 11 at 19), but even *Republic Steel*

17

acknowledged that docket congestion "slightly favor[ed] transfer" where individual actions were resolved more quickly in the transferee district.  *Republic Steel v. Beemac, Inc.*, No. 21-cv-00103 (DAR), 2022 WL 2872295, at *5 (N.D. Ohio July 21, 2022).

Further, though Smucker argues that the "remaining factors all weigh against transfer," its analysis is conclusory.  Dkt. 11 at 19.  Though Ohio "has a local interest in deciding this local controversy," the case that Smucker cites in support, *Handel's*, was decided pursuant to a choice of law provision that selected Ohio's law.  Dkt. 11 at 19 (citing *Handel's Enters., Inc. v. Schulenburg*, No. 18-cv-508 (BYP), 2018 WL 3097416, at *8 (N.D. Ohio June 22, 2018)).  Further, Smucker does not dispute that California similarly "possess[es] a strong interest in monitoring businesses incorporated within [its] borders."  *Hutchins*, 2013 WL 3289128, at *8.  And Smucker also does not dispute that California's public policy would be similarly affected— nor could it, since Trader Joe's has nearly 30 times as many stores in California as in Ohio.  Dkt. 11 at 19; Dkt. 10-2 ¶ 5.  Finally, as Trader Joe's explained in its Motion, "[t]he Ohio Deceptive Trade Practices [A]ct is substantially similar to the Lanham Act, and courts have stated that cases interpreting the Lanham Act are relevant to analysis of Ohio Deceptive Practices Act claims."  *NOCO*, 2024 WL 519886 at *4.  Smucker does not dispute this fact.  Accordingly, the interests of justice are, at worst, neutral, and may slightly favor transfer.

IV.     **CONCLUSION**

Trader Joe's respectfully requests that the Court dismiss with prejudice Smucker's third cause of action for dilution, and transfer this case to the Central District of California.

Dated:  February 23, 2026

Respectfully submitted,

/s/ Jennifer L. Barry
Jennifer L. Barry (228066)
LATHAM & WATKINS LLP
12670 High Bluff Drive
San Diego, CA 92130
(858) 523-5400 / (858) 523-5450 Fax
jennifer.barry@lw.com

Laura R. Washington (admitted *pro hac vice*)
LATHAM & WATKINS LLP
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
(424) 653-5500 / (424) 653-5501 Fax
laura.washington@lw.com

Kevin T. Shook (0073718)
FBT GIBBONS LLP
10 West Broad Street, Suite 2300
Columbus, OH 43215-3484
(614) 464-1211 / (614) 464-1737 Fax
kshook@fbtgibbons.com

*Attorneys for Defendant*
Trader Joe's Company

19

## CERTIFICATION OF COMPLIANCE

I, Jennifer L. Barry, certify that this case has not been assigned to a track pursuant to Local Rule 16.3. I certify that the Reply in Support of Defendant Trader Joe's Company's Motion to Dismiss and/or to Transfer Venue complies with the page limitation set forth in Local Rule 7.1(f) for dispositive motions of unassigned cases.

*/s/ Jennifer L. Barry*\
Jennifer L. Barry
