**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| J.M. Smucker Company, | ) | CASE NO.: 5:25CV2181 |
| | ) | |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN ADAMS |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Trader Joe's Company, | ) | (Resolves Doc. 10) |
| | ) | |
| Defendant. | ) | |

This matter appears before the Court on Defendant Trader Joe's Company's ("TJ") motion to dismiss and change venue. Plaintiff J.M. Smucker Company ("Smucker") has opposed the motion, and Trader Joe's has replied. For the reasons that follow, the motion is DENIED.

**I. Facts**

On October 13, 2025. Smucker filed this suit alleging claims of trademark infringement, unfair competition and false designation of origin, trademark dilution, violations of the Ohio Deceptive Trade Practices Act, and common law claims of trademark infringement and unfair competition. Smucker's suit is premised upon its allegation that "Trader Joe's Company has launched an obvious copycat" of Smucker's line of Uncrustables sandwiches. Doc. 1 at 1. TJ has moved to dismiss Smucker's trademark dilution claim and moved to transfer venue from this District to the Central District of California. The Court now resolves the matter.

## II. Legal Standard for Motion to Dismiss

The Supreme Court and the Sixth Circuit have stated the standard for reviewing a motion to dismiss in several cases. The Supreme Court has stated "[a] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The Sixth Circuit has clarified that a court may not grant a Rule (12)(b)(6) motion to dismiss merely because it may not believe the plaintiff's factual allegations. *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993). However, the plaintiff must still plead more than bare legal conclusions. *Id.* Specifically, the complaint must contain "either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988). The Supreme Court further clarified the standard by explaining that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). Additionally, the Court said, "even though a complaint need not contain 'detailed' factual allegations, its factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.*

TJ's motion has focused upon its claim that Smucker has failed to sufficiently plead the fame of the marks subject to the dilution claim. To succeed on a trademark dilution claim, a plaintiff must show the senior mark is (1) famous; and (2) distinctive. Use of the junior mark must (3) be in commerce; (4) have begun subsequent to the senior mark becoming famous; and (5) cause dilution of the distinctive quality of the senior

mark. *AutoZone, Inc. v. Tandy Corp*., 373 F.3d 786, 802 (6th Cir. 2004). A mark is considered famous when it is "widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). In other words, to be considered famous, a mark must be considered a "household name." *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1373 (Fed. Cir. 2012).

The Lanham Act lists four factors a court may consider when determining whether a mark is sufficiently recognizable to be famous. Courts may consider:

> (i) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.
>
> (ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark.
>
> (iii) The extent of actual recognition of the mark.
>
> (iv) Whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

15 U.S.C. § 1125.

Examples of marks courts have found sufficiently famous are Nike, Pepsi, Nissan, Audi, Budweiser, Camel, Barbie Dolls, Hershey's, and Victoria's Secret—brands with "a strong national presence," a "significant international presence," and "market dominance." *Kassa v. Detroit Metro Convention & Visitors Bureau*, 150 F. Supp. 3d 831, 841 (E.D. Mich. 2015), *aff'd*, 672 F. App'x 575 (6th Cir. 2017) (quoting *Maker's Mark Distillery, Inc. v. Diageo North America, Inc.*, 703 F.Supp.2d 671, 698–699 (W.D. Ky. 2010)); *Bd. of Regents, Univ. of Texas Sys. ex rel. Univ. of Texas at Austin v. KST Elec., Ltd*., 550 F. Supp. 2d 657, 679 (W.D. Tex. 2008).

Initially, the Court notes that TJ has correctly identified that the Court is not evaluating the fame of Smucker or even the name of their sandwich line, Uncrustables. Rather, the Court must determine whether Smucker has plausibly pled the fame of its design marks related to Uncrustables. Upon review, as detailed below, the Court finds that Smucker has met its pleadings standard.

The complaint alleges the following facts that the Court finds relevant to its analysis:

> ▪ For at least the last 20 years, Smucker has invested over a billion dollars to develop the goodwill associated with its Uncrustables brand and the trademark rights in and to the design of a round crustless sandwich, inclusive of the configuration in a round pie-like shape with distinct peripheral undulated crimping, as well as the pictorial representations of a round crustless sandwich in whole and with a bite taken out of it showing filling on the inside[.]
>
> ▪ Smucker uses the Uncrustables Design Marks to promote its high quality sandwich products on its website, on social media, on product advertisements, through in-store advertisements and on television[.]
>
> ▪ Smucker's Uncrustables sandwiches are sold in thousands of retail stores across the country.
>
> ▪ Smucker devotes a significant amount of time, energy and resources toward protecting the value of its Uncrustables brand and products and its efforts have yielded great rewards. As a direct result of significant time and investment, Smucker's Uncrustables branded products have grown over the past 20 years and the Uncrustables products are fast on their way to being a $1 billion brand. Smucker produces approximately 1.5 billion Uncrustables sandwiches annually at three manufacturing facilities in Kentucky, Colorado (opened in 2019), and Alabama (opened in 2024). Uncrustables sandwiches are recognized and enjoyed everywhere from school cafeterias to the National Football League.
>
> ▪ As a direct result of the time and effort promoting the Uncrustables Design Marks, Smucker's customers, its competitors and the consuming public have come to associate the high quality sandwiches offered by Smucker with its use of the Uncrustables Design Marks.

The Court has carefully reviewed the arguments set forth by TJ, however, the Court finds that Smucker has sufficiently pled fame to survive a motion to dismiss. The complaint includes allegations surrounding the scope of advertising and publicity, the scope sales, the registration status of the marks, and allegations regarding the extent of recognition of the marks. While TJ claims that these allegations relate more to the *brand* than the marks at issue, the Court finds that the allegations of the complaint are sufficiently tied to the marks to allow the matter to move forward with discovery. Similarly, while Smucker has not made separate allegations for each mark at issue, the Court finds that resolution of that legal issue is better suited for summary judgment following a period of discovery. Accordingly, the partial motion to dismiss is DENIED.

**III. Legal Standard for Change of Venue**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "As the permissive language of the transfer statute suggests, district courts have 'broad discretion' to determine when party 'convenience' or 'the interest of justice' make a transfer appropriate." *Reese v. CNH America LLC*, 574 F.3d 315, 320 (6th Cir. 2009) (quoting *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994)). In ruling on this motion, the Court must consider six factors: "the convenience of the parties and witnesses," the accessibility of evidence, "the availability of process" to make reluctant witnesses testify, "the costs of obtaining willing witnesses," "the practical problems of trying the case most expeditiously and inexpensively" and "the interests of justice." *Reese*, 574 F.3d at 320 (citations omitted).

A colleague on this Court has explained the analysis as follows:

> District courts vary in their enumeration of the specific factors to consider when ruling on a motion to transfer pursuant to § 1404(a), but such factors can include: (1) the plaintiff's choice of forum, (2) the residence of the parties, (3) the nature of the suit, (4) the place where events took place, (5) the possibility of inspecting the premises, (6) the ease of access to sources of proof, (7) the location of material witnesses, (8) the availability of compulsory processes for the attendance of those witnesses, (9) other problems that may contribute to litigation expenses, (10) the local interest in deciding the controversy locally, (11) the burden of jury duty on the community, and (12) the congestion of court dockets. From this variation, it is clear that there is no definitive list of private and public factors in the 1404(a) calculus. Courts need not discuss every factor that may influence the balance of conveniences and the interest of justice, but rather should focus their analysis on those factors that are particularly relevant to a given transfer determination.

*Schindewolf v. Seymour Constr., Inc.*, 2010 WL 2290803, at *7 (N.D.Ohio June 3, 2010) (citations, quotations, and alterations omitted).

TJ contends that this matter should be transferred to the Central District of California where it has its principal place of business. TJ claims that its third-party producer of the alleged infringing product is located in Los Angeles County and that numerous employees of that company would likely need to be called as witnesses in this matter. The Court acknowledges that the convenience of non-party witnesses is afforded greater weight than employee witnesses. As such, the Court has considered the inconvenience of these witnesses. However, Smucker is correct that there is an ability to conduct depositions in California or via an electronic means that would require no travel. As such, the Court finds the alleged inconvenience associated with these witnesses to only slightly weigh in favor of transfer. Similarly, the need for compulsory process over those witnesses also only slightly weighs in favor of transfer. Given the commercial relationship between TJ and its producer, the Court simply finds its unlikely that employees of the producer would actively resist assisting in TJ's defense in this matter.

The Court also finds that there is a local interest in resolving the matter as it involves a company headquartered in this District and includes allegations of infringing conduct within this District. The location of the operative facts would appear to be evenly split between Ohio and California as evidence regarding the creation of the marks themselves and evidence regarding the creation of the infringing product would exist in the competing forums.

Accordingly, upon reviewing all of the factors, the Court finds that the scales are relatively balanced. Because this District is a proper venue for suit, Smucker's choice of venue is ultimately given substantial weight. The motion to transfer, therefore, is DENIED.

Based upon the above, this matter will promptly be scheduled for a case management conference by separate order of the Court.

IT IS SO ORDERED.

August 28, 2026

*/s/ Judge John R. Adams*
JUDGE JOHN R. ADAMS
UNITED STATES DISTRICT COURT