**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **THE J.M. SMUCKER COMPANY,** an Ohio Corporation | ) | |
| Plaintiff, | ) | Case No. 5:25-cv-02181-JRA |
| v. | ) | Judge John R. Adams |
| **TRADER JOE'S COMPANY,** a California Corporation | ) | |
| Defendant. | ) | |

**DEFENDANT TRADER JOE'S COMPANY'S**
**AMENDED ANSWER AND COUNTERCLAIMS TO**
**PLAINTIFF THE J.M. SMUCKER COMPANY'S COMPLAINT**

Defendant Trader Joe's Company ("Trader Joe's") answers the Complaint filed by Plaintiff The J.M. Smucker Company ("Smucker") and asserts counterclaims as follows:

## NATURE OF THE ACTION

1. Trader Joe's admits that Smucker's Uncrustables® sandwiches are sold in the frozen handheld category in the United States. Trader Joe's lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this Paragraph and Footnote 1, including as to Smucker's alleged investments and marketing expenditures, and on that basis denies them.

2. Trader Joe's admits that it sells a crustless peanut butter and strawberry jam sandwich product, images of which are shown below. Trader Joe's denies that its product is a "copycat" or that it was introduced in an effort to "trade off" of any goodwill or intellectual property of Smucker. The remainder of this Paragraph contains characterizations and legal conclusions that do not require a response; to the extent a response is required, Trader Joe's denies them.








3. Trader Joe's admits that there is an existing marketplace of prepackaged, frozen, thaw-and-eat crustless sandwiches. Trader Joe's lacks sufficient knowledge or information to form a belief as to the truth of the remainder of the allegation regarding Smucker's belief. Trader Joe's denies that its sandwiches "use" Smucker's "intellectual property." Trader Joe's denies that its actions "constitute trademark infringement, trademark dilution, unfair competition, false designation of origin [and/or] deceptive trade practices." Trader Joe's denies that Smucker is entitled to any "damages, costs, profits, [and/or] injunctive relief." The remainder of this Paragraph contains legal conclusions that do not require a response; to the extent a response is required, Trader Joe's denies them.

## PARTIES

4. Trader Joe's lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph regarding Smucker's corporate history and on that basis denies them. Trader Joe's admits, on information and belief, that Smucker is a corporation organized under the laws of the State of Ohio with its principal place of business at One Strawberry Lane, Orrville, Ohio.

5. Trader Joe's lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph, and on that basis denies them.

6. Trader Joe's admits that it is a corporation organized and existing under the laws of the State of California with its principal place of business located at 800 South Shamrock Avenue, Monrovia, California 91016. Trader Joe's admits that it operates hundreds of neighborhood grocery stores throughout the United States, including seven stores in the State of Ohio.

7. Trader Joe's admits that, in connection with the sale of certain products in its neighborhood grocery stores, it enters into private-label relationships with suppliers to sell products bearing the "Trader Joe's" brand. Trader Joe's denies that all such relationships are properly characterized as "private label relationships with nationally-recognized brands."

## JURISDICTION AND VENUE

8. This Paragraph contains legal conclusions that do not require a response. Nevertheless, Trader Joe's states that, solely for purposes of this action, it does not presently contest that this Court has subject matter jurisdiction over the claims asserted in the Complaint.

9. This Paragraph contains legal conclusions that do not require a response. Nevertheless, Trader Joe's states that, solely for purposes of this action, it does not presently contest that this Court has personal jurisdiction over Trader Joe's. Trader Joe's admits that it operates retail stores and conducts business at various locations within the State of Ohio. Trader Joe's denies that its actions are causing harm to Smucker and its business in the State of Ohio.

10. This Paragraph contains legal conclusions that do not require a response. Nevertheless, Trader Joe's states that, solely for purposes of this action, it does not presently contest that venue is proper in this judicial district.

## FACTS COMMON TO ALL COUNTS

11. Trader Joe's lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph and, on that basis, denies them.

12. Trader Joe's lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph regarding Smucker's alleged investment and development of goodwill, and on that basis denies them. The remainder of this Paragraph contains

characterizations and legal conclusions that do not require a response; to the extent a response is required, Trader Joe's denies them.

13. The documents and records of the United States Patent and Trademark Office ("USPTO") speak for themselves and to the extent Smucker's allegations differ, they are denied. Trader Joe's lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this Paragraph and therefore denies any and all remaining allegations contained in this Paragraph.

14. The documents and records of the USPTO speak for themselves and to the extent Smucker's allegations differ, they are denied. The remainder of this Paragraph contains legal conclusions that do not require a response; to the extent a response is required, Trader Joe's denies those remaining allegations.

15. Trader Joe's admits that it does not have a license agreement from Smucker regarding U.S. Trademark Registration No. 2,623,577.

16. The documents and records of the USPTO speak for themselves and to the extent Smucker's allegations differ, they are denied. Trader Joe's lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this Paragraph and therefore denies any and all remaining allegations contained in this Paragraph.

17. The documents and records of the USPTO speak for themselves and to the extent Smucker's allegations differ, they are denied. The remainder of this Paragraph contains legal conclusions that do not require a response; to the extent a response is required, Trader Joe's denies those remaining allegations.

18. Trader Joe's admits that it does not have a license agreement from Smucker regarding U.S. Trademark Registration No. 2,883,529.

19. The documents and records of the USPTO speak for themselves and to the extent Smucker's allegations differ, they are denied. Trader Joe's lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this Paragraph and therefore denies any and all remaining allegations contained in this Paragraph.

20. Trader Joe's admits that it does not have a license agreement from Smucker regarding U.S. Trademark Registration No. 5,941,408. The remainder of this Paragraph contains legal conclusions that do not require a response; to the extent a response is required, Trader Joe's denies those remaining allegations.

21. The documents and records of the USPTO speak for themselves and to the extent Smucker's allegations differ, they are denied. Trader Joe's lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this Paragraph and therefore denies any and all remaining allegations contained in this Paragraph.

22. Trader Joe's admits that it does not have a license agreement from Smucker regarding U.S. Trademark Registration No. 7,871,982. The remainder of this Paragraph contains legal conclusions that do not require a response; to the extent a response is required, Trader Joe's denies those remaining allegations.

23. Trader Joe's admits that the marks described in paragraphs 13-22 of the Complaint are referred to collectively in the Complaint as the "Uncrustables Design Marks." The remainder of this Paragraph contains legal conclusions that do not require a response; to the extent a response is required, Trader Joe's denies them.

24. Denied.

25. Trader Joe's admits that, as of the date of this answer, the webpage located at https://www.smuckersuncrustables.com/articles/quick-easy-lunch-ideas-for-kids includes the following sentences: "Uncrustables[] sandwiches require literally ZERO prep. You just take them out of the freezer in the morning, and they're thawed and ready to eat by lunchtime. So they're perfect for school and other on-the-go occasions." Trader Joe's lacks sufficient knowledge or information to form a belief as to the truth of the remainder of the allegations in this Paragraph and therefore denies any and all remaining allegations contained in this Paragraph.

26. Trader Joe's lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph and therefore denies any and all allegations contained in

this Paragraph. To the extent the Paragraph references websites or social media, those materials speak for themselves.

27. Trader Joe's lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph and therefore denies any and all allegations contained in this Paragraph.

28. Trader Joe's lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph and therefore denies any and all allegations contained in this Paragraph.

29. To the extent this Paragraph references a website, that material speaks for itself. Trader Joe's lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this Paragraph and therefore denies any and all remaining allegations contained in this Paragraph.

30. Trader Joe's lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph and in Footnote 2, and therefore denies any and all allegations contained in this Paragraph. To the extent Footnote 2 references a website, those materials speak for themselves.

31. Trader Joe's lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph and therefore denies any and all allegations contained in this Paragraph.

32. Denied.

33. Denied.

34. Trader Joe's admits that it sells a crustless sandwich with a sealed edge, images of which are shown below. Trader Joe's denies that its product was introduced "in an obvious attempt to trade off" any of the alleged Uncrustables Design Marks, and denies that its product or packaging "mimics" the alleged Uncrustables Design Marks. Trader Joe's denies that the alleged Uncrustables Design Marks are "fam[ous]." Except as expressly admitted, Trader Joe's denies the remaining allegations in this Paragraph.




35. The documents and records of the USPTO speak for themselves and to the extent Smucker's allegations differ, they are denied. Trader Joe's denies that its packaging "mimics" Smucker's packaging or the Uncrustables Design Marks. Trader Joe's denies that Smucker has "trademark rights" in the color blue. Trader Joe's denies that its packaging uses the "same color blue" that is shown in U.S. Trademark Reg. Nos. 7,799,903 and 7,443,335. Trader Joe's denies the remaining allegations in this Paragraph.

36. The documents and records of the USPTO speak for themselves and to the extent Smucker's allegations differ, they are denied. Trader Joe's denies that Smucker holds "rights in and to the color blue in connection with sandwich products." Trader Joe's admits that it does not have a license agreement from Smucker regarding U.S. Trademark Reg. Nos. 7,799,903 and 7,443,335. Except as expressly admitted, Trader Joe's denies the remaining allegations in this Paragraph.

37. This Paragraph contains legal conclusions that do not require a response; to the extent a response is required, Trader Joe's denies them.

38. Trader Joe's lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph and therefore denies any and all allegations contained in

this Paragraph. To the extent the Paragraph references websites or social media, those materials speak for themselves.

39. To the extent this Paragraph references an article, that material speaks for itself. Trader Joe's denies all allegations of "confusion and deception." Trader Joe's denies the characterizations of its packaging and labeling. Trader Joe's denies the remaining allegations in this Paragraph.

40. Denied.

## FIRST CLAIM FOR RELIEF

**(Trademark Infringement 15 U.S.C. §§ 1114 and 1125)**

41. Trader Joe's restates its responses to the Paragraphs above.

42. This Paragraph contains legal conclusions that do not require a response; to the extent a response is required, Trader Joe's denies them.

43. Trader Joe's admits that it does not have a license agreement from Smucker regarding U.S. Trademark Registration Nos. 2,623,577, 2,883,529, 5,941,408, or 7,871,982.

44. Denied.

45. Denied.

46. Denied.

47. Denied.

48. Denied.

49. Denied.

50. Denied.

51. Denied.

52. Denied.

## SECOND CLAIM FOR RELIEF

**(Unfair Competition and False Designation of Origin 15 U.S.C. § 1125(a))**

53. Trader Joe's restates its responses to the Paragraphs above.

54. This Paragraph contains legal conclusions that do not require a response; to the extent a response is required, Trader Joe's denies them.

55. Trader Joe's admits that it does not have a license agreement from Smucker regarding U.S. Trademark Registration Nos. 2,623,577, 2,883,529, 5,941,408, or 7,871,982.

56. Denied.

57. Denied.

58. Denied.

59. Denied.

60. Denied.

61. Denied.

62. Denied.

63. Denied.

64. Denied.

**THIRD CLAIM FOR RELIEF**

**(Trademark Dilution 15 U.S.C. § 1125(c))**

65. Trader Joe's restates its responses to the Paragraphs above.

66. Denied.

67. Denied.

68. Denied.

69. Denied.

70. Denied.

71. Denied.

72. Denied.

**FOURTH CLAIM FOR RELIEF**

**(Ohio Deceptive Trade Practices Act Ohio Revised Code § 4165.01 et seq.)**

73. Trader Joe's restates its responses to the Paragraphs above.

74. Denied.

75. Denied.

76. Denied.

**FIFTH CLAIM FOR RELIEF**

**(Common Law Trademark Infringement and Unfair Competition)**

77. Trader Joe's restates its responses to the Paragraphs above.

78. This Paragraph contains legal conclusions that do not require a response; to the extent a response is required, Trader Joe's denies them.

79. Denied.

80. Denied.

81. Denied.

82. Denied.

83. Denied.

84. Denied.

**PRAYER FOR RELIEF**

The remaining paragraphs in the Complaint constitute Smucker's request for remedies and prayer for relief, to which no answer is required. To the extent that these Paragraphs purport to state any factual allegations, Trader Joe's denies them. All allegations in the Complaint that Trader Joe's has not expressly admitted are denied. Trader Joe's denies that Smucker is entitled to any of the relief sought in its Prayer for Relief and demands strict proof thereof.

**AFFIRMATIVE DEFENSES**

Trader Joe's undertakes the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are identified below. Trader Joe's expressly reserves the right to plead additional affirmative and other defenses should any such defenses be revealed by discovery in this case or any other means. For its affirmative and other defenses, Trader Joe's states as follows:

**First Defense: Failure to State a Claim**

Smucker's Complaint fails to state claims upon which relief can be granted.

**Second Defense: No Likelihood of Confusion**

Smucker's claims fail because there is no likelihood of confusion between Trader Joe's products and Smucker's alleged trademarks.

**Third Defense: Functionality**

Smucker's claims fail because the design elements of the Uncrustables Design Marks are functional. The shape with peripheral crimping is essential to the use or purpose of crustless sealed sandwiches or affects the cost or quality of such products. Smucker cannot claim exclusive trademark rights in functional product features.

**Fourth Defense: Merely Descriptive and/or Generic; Lack of Secondary Meaning**

Smucker's claims fail because the design elements of the Uncrustables Design Marks are either descriptive without secondary meaning and/or generic, with respect to crustless sandwiches.

**Fifth Defense: Good Faith Adoption**

Smucker's claims are barred in whole or in part by the doctrine of good faith adoption. Trader Joe's adopted its product design and packaging in good faith, without any intent to trade upon Smucker's alleged trademark rights.

**Sixth Defense: Waiver, Estoppel, and Acquiescence**

Smucker's claims are barred, in whole or in part, by the doctrines of waiver, estoppel, and/or acquiescence.

**Seventh Defense: No Damages**

Smucker's claims and prayer for relief are barred in whole or in part because Smucker has suffered no actual damages resulting from Trader Joe's alleged conduct. Any claim for damages is speculative and unsupported by evidence.

**Eighth Defense: Failure to Mitigate**

Smucker's claims and prayer for relief are barred in whole or in part because, to the extent Smucker has suffered any damages, it has failed to take appropriate action to mitigate those alleged damages.

**Ninth Defense: No Willfulness**

Smucker's claims fail because Trader Joe's has not engaged in any willful infringement. Trader Joe's did not act with any intent to infringe or willfully disregard Smucker's alleged trademark rights.

**Tenth Defense: No Exceptional Case**

Under 15 U.S.C. § 1117(a), attorneys' fees are available only in exceptional cases. Trader Joe's conduct does not constitute exceptional misconduct, and Smucker's claim for attorneys' fees is meritless.

**Eleventh Defense: Unclean Hands & Trademark Misuse**

Smucker's claims are barred, in whole or in part, by the doctrines of unclean hands and trademark misuse.

**Twelfth Defense: No Dilution**

Smucker's dilution claims fail because Trader Joe's conduct has not diluted the distinctiveness of the Uncrustables Design Marks by blurring or tarnishment. Smucker has not established that the Uncrustables Design Marks are famous within the meaning of 15 U.S.C. § 1125(c).

**Thirteenth Defense: Res Judicata, Collateral Estoppel, Issue Preclusion**

Smucker's claims are barred, in whole or in part, by res judicata, collateral estoppel, issue preclusion, and related doctrines, including estoppel based on Smucker's patent prosecution history.

**RESERVATION OF RIGHTS**

Trader Joe's reserves the right to amend this Answer and Affirmative Defenses to add additional defenses as they become known through discovery or further development of this case, including under Federal Rule of Civil Procedure 8(c), Federal Rule of Civil Procedure 15, and/or any other applicable law.

## PRAYER FOR RELIEF

THEREFORE, Trader Joe's prays for the following relief.

A. That Smucker take nothing by its Complaint, and that Trader Joe's be awarded judgment in this action;

B. That Trader Joe's be awarded its costs and attorneys' fees in this action; and

C. For such other legal or equitable relief as this Court deems just and proper.

## COUNTERCLAIMS

Defendant Trader Joe's Company ("Trader Joe's") brings these counterclaims against Plaintiff The J.M. Smucker Company ("Smucker") seeking cancellation of U.S. Trademark Registration No. 2,623,577 (the "577 Registration"), U.S. Trademark Registration No. 2,883,529 (the "529 Registration"), and U.S. Trademark Registration No. 5,941,408 (the "408 Registration") (collectively, the "Asserted Registrations").

1. These counterclaims seek to cancel Smucker's Asserted Registrations because the design features they claim as trademarks—a circular shape with peripheral undulating crimping—are functional product features that Smucker previously patented and touted as utilitarian innovations.

2. Smucker obtained U.S. Patent No. 6,004,596 (the "596 Patent") for these same features, representing to the United States Patent and Trademark Office ("USPTO") that the crimped edges served the utilitarian purpose of sealing the sandwich's filling and maintaining its structural integrity. While simultaneously prosecuting its trademark applications, Smucker made contradictory representations to a different branch of the same government agency.

3. The 596 Patent and all related patent applications have since been cancelled, rejected, or abandoned. Yet Smucker continues to assert trademark registrations covering the same functional features against Trader Joe's.

## THE PARTIES

4. Trader Joe's is a corporation organized and existing under the laws of the State of California, with its principal place of business at 800 South Shamrock Avenue, Monrovia, California 91016. Trader Joe's operates hundreds of neighborhood grocery stores throughout the United States, including seven locations in the State of Ohio.

5. On information and belief, Smucker is a corporation organized and existing under the laws of the State of Ohio, with its principal place of business at One Strawberry Lane, Orrville, Ohio 44667.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over these counterclaims pursuant to 28 U.S.C. §§ 1331, 1338, and 15 U.S.C. § 1121.

7. The Court has personal jurisdiction over Smucker, as Smucker consented to personal jurisdiction by commencing its action in this District, and Trader Joe's counterclaims arise out of the same transactions or occurrences that are the subject of Smucker's claims.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

## FACTUAL ALLEGATIONS

### A. The Asserted Registrations—All About Round, Crustless Sandwiches With Crimped Edges

9. Smucker sells round, crustless sandwiches with crimped edges under its "Uncrustables" brand, which it claims are encompassed in the 577 Registration, the 529 Registration, and the 408 Registration.

10. The 577 Registration purports to cover a "configuration in a round pie-like shape with distinct peripheral undulating crimping" for sandwich products, as shown below (the "Shape Mark").



11. The 529 Registration purports to cover "a pictorial representation of a round crustless sandwich" for food products, as shown below (the "Pictorial Mark").



12. The 408 Registration purports to cover "a two-dimensional pictorial representation of a round crustless sandwich with a bite taken out of it showing the filling inside," for sandwiches, as shown below (the "Bitten Pictorial Mark").



13. The problem with each of these registrations is that they embody fully functional, and therefore unregistrable, concepts—a fact that Smucker has not only conceded via its patent-related filings, but also concealed from the USPTO in the process of securing each registration.

**B. The 596 Patent and Related Patents—All About Round, Crustless Sandwiches With Crimped Edges**

14. To this day, Smucker boasts that, in 1999, it "secured a patent for a 'sealed crustless sandwich.'"[1] That reference appears to be the 596 Patent, which issued in December 1999.

[1] https://www.smuckersuncrustables.com/articles/brand-history (last visited Oct. 2, 2026).

15. The 596 Patent "relate[d] to a sealed crustless sandwich for providing a convenient sandwich without an outer crust which can be stored for long periods of time without a central filling from leaking outwardly." The 596 Patent included two figures that illustrated the components and configuration of the claimed sandwich, as shown below.




FIG. 3




FIG. 4

16. The 596 Patent's specifications included teachings related to the sandwich's crimping and its function. In detail, referencing Figs. 3-4 above, the 596 Patent taught that the sandwich's "crimped edge [] preferably has a plurality of depressions [] formed into from the pressure points caused by the notched end [] of the sleeve []." The 596 Patent also taught that the depressions in the crimping "prevent the crimped edge [] from separating thereby retaining the fillings [] within."

17. The 596 Patent included ten claims. Claim 1 purported to cover "[a] sealed crustless sandwich, comprising" multiple bread layers, filling, and "a crimped edge directly between said first perimeter surface and said second perimeter surface ***for sealing*** said at least one filling between said first bread layer and said second bread layer[.]"[2]

---

[2] Unless otherwise specified, all emphasis is added.

18. Claim 2 depended from Claim 1, reciting its same elements and expressly claiming "said crimped edge ***includes*** a plurality of ***spaced apart depressions for increasing a bond*** of said crimped edge."

19. Claim 8 depended from Claims 2-7 and covered the "crimped edge" that is "formed into ***a substantially circular shape***."

20. The 596 Patent also taught how the sandwich, including its crimping, was made using a "cutting cylinder" that "penetrates the bread portions" and "cut[s] out [the] circular portion surrounding the fillings." Thereafter, the "notched end" "forces the circular portion of the upper bread portion [] onto the corresponding circular portion of the lower bread portion [] thereafter crimping the bread portions [] between the notched end [] and a plate [] supporting the lower bread portion." "Simultaneously during the crimping, the upper filling [] is forced into the lower filling [] surrounding the center filling [], thereby sealing the center filling [] therebetween."

21. Notably, to secure the 596 Patent, Smucker responded to an Office Action letter from the USPTO by arguing that prior art was distinguishable because of the claimed invention's function, i.e., sealing, via a crimped edge: "None of the prior art references disclose or even remotely suggest a crustless sandwich in which a filling is sealed by crimping the peripheral edges of the bread slices."

22. But Smucker's 596 Patent did not achieve its desired goal of monopolizing crustless PB&J sandwiches. In the early 2000s, another party petitioned for reexamination of the 596 Patent, and the USPTO granted reexamination and cancelled all ten asserted claims. In fighting that (ultimately losing) battle, Smucker repeatedly argued that its sandwich shape was functional, asserting that, for example, its "crimped edges" keep the filling from radiating outward, the "crimped" surfaces "seal[] the bread portions at the area around the filling," and the depressions in the crimping were spaced "to increase the bond of the crimped edge." Smucker further argued that "claimed spaced depressions" in the crimping "have a claimed function" and "are not merely decorative undulations or scallops." It also argued that the crimped edges were "a new innovation that ***has utility***, the very definition of a patentable item."

23. The 596 Patent did not represent Smucker's only effort to secure functional patent protection over its round, crimped, crustless sandwiches. Smucker filed for multiple additional patents claiming priority back to the 596 Patent.

24. In the United States, Smucker filed numerous additional patent applications related to the 596 Patent, including U.S. Application Nos. 09/404,701, 09/780,690, 09/821,137, 09/845,925, 10/314,770, and 10/806,554 (collectively with the 596 Patent, the "Related Patent Applications"). These filings, made between 1999 and 2004, each again attempted to assert protections over circular, crustless sandwiches and directed claims to the circular shape and crimped edge of the sandwich as functional features.

25. In prosecuting those filings, Smucker continued to make similar representations regarding the functionality of those claimed features. Smucker also repeatedly argued that its crustless sandwich product had gained traction without "heavy promotion" or "massive advertising," attributing the (allegedly) growing popularity of the product to the functional features claimed in its patent filings instead.

26. Additionally, in November 1998, Smucker filed a patent application (Serial No. 2,254,445, the "Canadian Patent Application") with the Canadian Intellectual Property Office, claiming priority to the patent application that ultimately issued as the 596 Patent. The Canadian Patent Application disclosed, illustrated, and claimed a round, sealed, crustless sandwich, and included claims to the circular shape of the crustless sandwich with crimped edges.

27. The 596 Patent and all Related Patent Applications have been cancelled, rejected, or abandoned.

### C. Smucker's Contradictions—Once Again All About Round, Crustless Sandwiches With Crimped Edges

28. While engaging with one arm of the USPTO regarding the patents filings discussed above, Smucker also engaged another arm of the USPTO to seek trademark protection for its round, crustless sandwiches with crimped edges.

**i) *Prosecution of the 577 & 529 Registrations***

29. On December 21, 2000, Smucker filed App. No. 76184192 (the "192 Application"), which would ultimately mature into the 577 Registration. In filing that application, Smucker represented to the USPTO that the claimed mark "ha[d] become distinctive, as applied to applicant's goods and/or services," that Smucker "believe[d] it [was] the owner of the mark," that "mark is used in commerce," and that "to the best of [Smucker's] knowledge and belief, no other person ha[d] the right to use the mark in commerce, either in identical form or in such near resemblance as to be likely, when applied to the goods or services of the other person, to cause confusion or mistake, or to deceive." Nowhere in that application did Smucker disclose its concurrent patent efforts.

30. In May 2001, the USPTO issued an Office Action letter refusing the 192 Application "because the proposed mark [was] a configuration of the goods which is not inherently distinctive." The examining attorney further explained that the applicant needed to present "evidence" of "acquired distinctiveness," relating to "the promotion and recognition of the specific configuration embodied in the proposed mark and not to the goods in general."

31. In August 2001, Smucker submitted a response to the May 2001 Office Action, arguing that the applied-for mark "ha[d] acquired distinctiveness" due to "continued extensive promotion of the subject mark as a source indicator for its sandwiches." On that point, Smucker's Vice President and General Manager of Foodservice Market, Steven T. Oakland, submitted a signed declaration, averring that "[t]he design of the mark has been extensively promoted by The J.M. Smucker Company as a source designator" and was "advertised in the United States through various media, such as in magazines, television and other mail-related advertisements."

32. Yet that averment squarely contravened what Oakland had represented just months earlier in the course of the prosecution of the 701 Patent Application, i.e., that the Uncrustables product "constructed as shown in United States Letters Patent No. 6,004,596" is "the fastest growing product of The J.M. Smucker Company in the last many years," and "[s]uch growth in this highly competitive market can ***only*** be explained by the merits of the Product."

33. It also contravened Smucker's arguments during prosecution of the 137 and 701 Patent Applications. As to the former, Smucker argued that the evidence established that "the only reason this product is selling extensively is because the product is made in accordance with the claimed methods of this application." As to the latter, Smucker told the USPTO that the "growth" of its round sandwiches in "this highly competitive market" could "***only*** be explained by the merits of the Product."

34. Were that not enough, it also contravened what online sources report Smucker Chief Executive Officer Mark Smucker would go on to tell the media in an interview decades later in 2023, i.e., "We have done virtually no marketing on Uncrustables."[3] According to that same interview, "Smucker said Uncrustables' popularity is due to its convenience and lack of mess," i.e., functional features of the product.

35. Smucker's August 2001 Office Action response further represented that the mark "does not represent a simpler or cheaper method of manufacturing."

36. But at the time that Smucker was telling the trademark examiner that its mark did "not represent a simpler or cheaper method of manufacturing," Smucker had simultaneously been prosecuting patent applications emphasizing that: (a) the circular shape of the round crustless sandwich maximizes the ability of the fillings to reach the outer edge of the sandwich, whereas alternative designs (such as squares, triangles, or other shapes with corners or smaller radii of curvature) result in a less uniformly filled sandwich with "empty corners" where the fillings have not reached; and (b) utilizing a circular shape for sealed crustless sandwiches better spaces the cut sandwich away from the crust in a more effective manner and decreases the likelihood that the crust will interfere with the seal, thereby improving production efficiency and manufacturing yield.

37. Smucker's half-truths to the USPTO in prosecuting the 577 Registration also included assertions that advertising of the sandwiches emphasized that the "round shape" and

---

[3] *Uncrustables, expensive and ultraprocessed, flying out of retailer freezers*, Bloomberg (June 29, 2023), https://www.bloomberg.com/news/articles/2023-06-29/smuckers-sees-uncrustables-worth-1-billion-with-production-advertising-boost.

"sealed edges" make "every bite fun and neat to eat" and did "not tout the utilitarian advantage of the shape," while failing to disclose that: (a) the sealed edges assist in making the sandwich "neat to eat" by retaining the fillings and preventing leakage of filling; and (b) the round shape assists in making "every bite fun and neat to eat" by aiding distribution of the fillings to the perimeter of the sandwich, thereby precluding any bites of an empty corner.

38. On November 14, 2001, Smucker filed App. No. 76336653, which would ultimately mature into the 529 Registration. In filing that application, Smucker represented to the USPTO that the claimed mark "ha[d] become distinctive, as applied to applicant's goods and/or services, by reason of substantially exclusive and continuous use thereof as a mark by the applicant in commerce which may be lawfully regulated by Congress for the 5 years next preceding the date of the filing of the application" (despite the fact that the application claimed the mark was first used in commerce in December 1996 and the application was filed less than five years later in November 2001). Smucker also represented that it "believe[d] it [was] the owner of the mark," that "mark is used in commerce," and that "to the best of [Smucker's] knowledge and belief, no other person ha[d] the right to use the mark in commerce, either in identical form or in such near resemblance as to be likely, when applied to the goods or services of the other person, to cause confusion or mistake, or to deceive," and "the facts set forth in the application are true." Once again, nowhere did Smucker disclose its concurrent patent efforts.

39. On information and belief, Smucker never disclosed the existence of the 596 Patent, the Related Patent Applications, or its statements to the patent office about the functional nature of the crimped edge and circular shape to the trademark examiner during prosecution of the 577 Registration or the 529 Registration.

**ii) *Prosecution of the 408 Registration***

40. On October 18, 2018, Smucker filed App. No. 88160150, which would ultimately mature into the 408 Registration. To support this application, Smucker claimed back to its ownership of the 577 and 529 Registrations.

41. On February 6, 2019, the USPTO issued an Office Action refusing the application because, among other things, it was for "a nondistinctive product design or nondistinctive features of a product design that [are] not registrable. . . . Applicant has applied to register a depiction of the goods, namely, sandwiches, with a bite taken out showing filling on the inside for sandwiches." Further, the examiner explained that "the applied-for mark, as used on the specimen of record, does not function as a trademark," but rather was "merely an informational depiction of what is contained in the packaging of the goods."

42. In response, Smucker argued that the applied-for mark was inherently distinctive because of the "missing bite" or, in the alternative, that the mark had acquired distinctiveness as a result of its ties to the 529 Registration and past use.

43. In the February 2019 Office Action, the USPTO also stated that "Applicant must provide," among other things:

a. "[a] written statement as to whether the applied-for mark, or any feature(s) thereof, is or has been the subject of a design or utility patent or patent application, including expired patents and abandoned patent applications. Applicant must also provide copies of the patent and/or patent application documentation[,]"

b. "[a] written explanation and any evidence as to whether there are alternative designs available for the feature(s) embodied in the applied-for mark, and whether such alternative designs are equally efficient and/or competitive. Applicant must also provide a written explanation and any documentation concerning similar designs used by competitors[,]" and

c. "[a] written statement as to whether the product design or packaging design at issue results from a comparatively simple or inexpensive method of manufacture in relation to alternative designs for the product/container. Applicant must also provide information regarding the method and/or cost of manufacture relating to applicant's goods[.]"

44. Smucker declined to provide the requested information, claiming that the inquiry "pertains to a three-dimensional configuration of goods" and that because it was amending the mark description to "a two-dimensional, pictorial representation," "no further response is required."

45. On information and belief, ultimately, Smucker did not disclose the 596 Patent, the Related Patent Applications, or the Reexamination Proceedings, ***despite the examiner's express requests***.

**FIRST CLAIM FOR RELIEF**

**Cancellation of the 577 Registration Under 15 U.S.C. §§ 1064(3) and 1119 (Fraud)**

46. Trader Joe's incorporates by reference the factual allegations set forth above.

47. Smucker is the registered owner of the 577 Registration for the three-dimensional product configuration (Shape Mark), specifically the circular crustless sandwich with peripheral undulating crimping.

48. On information and belief, in prosecuting the 577 Registration, Smucker made false representations and material omissions to the USPTO, including that its advertisements "do not tout the utilitarian advantage of the shape" and that the mark "does not represent a simpler or cheaper method of manufacturing," while simultaneously arguing to the patent office that the same features were functional innovations.

49. On information and belief, Smucker never disclosed the 596 Patent, the Related Patent Applications, or any of its statements to the patent office about the functional nature of the crimped edge and circular shape to the trademark examiner during prosecution of the 577 Registration.

50. Smucker's false representations and omissions were material to the registrability of the Shape Mark. Functionality is a complete bar to registration, and on information and belief, had the USPTO been aware of the 596 Patent, Smucker's related filings, and Smucker's own statements establishing the functional nature of the features, the USPTO would not have issued the 577 Registration.

51. Trader Joe's has been and continues to be injured by the existence of the 577 Registration, which has been asserted against Trader Joe's in this lawsuit.

52. The Court should issue an appropriate order pursuant to 15 U.S.C. § 1119 directing the USPTO to cancel the 577 Registration.

**SECOND CLAIM FOR RELIEF**

**Cancellation of the 529 Registration Under 15 U.S.C. §§ 1064(3) and 1119 (Fraud)**

53. Trader Joe's incorporates by reference the factual allegations set forth above.

54. Smucker is the registered owner of the 529 Registration for the two-dimensional Pictorial Mark depicting a round crustless sandwich.

55. The Pictorial Mark depicts the same round crustless sandwich with crimped edges that was the subject of the 596 Patent and Related Patent Applications.

56. On information and belief, Smucker never disclosed the 596 Patent, the Related Patent Applications, or any of its statements to the patent office about the functional nature of the crimped edge and circular shape to the trademark examiner during prosecution of the 529 Registration.

57. Smucker's omissions were material to the registrability of the Pictorial Mark, and on information and belief, the USPTO would not have issued the 529 Registration had it been aware of Smucker's patent proceedings and statements.

58. The Court should issue an appropriate order pursuant to 15 U.S.C. § 1119 directing the USPTO to cancel the 529 Registration.

**THIRD CLAIM FOR RELIEF**

**Cancellation of the 408 Registration Under 15 U.S.C. §§ 1064(3) and 1119 (Fraud)**

59. Trader Joe's incorporates by reference the factual allegations set forth above.

60. Smucker is the registered owner of the 408 Registration for a two-dimensional pictorial representation of a round crustless sandwich with a bite taken out showing filling on the inside (Bitten Pictorial Mark).

61. During prosecution of the 408 Registration, the trademark examiner specifically requested disclosure of any patents covering the applied-for mark. Smucker declined to answer, claiming the request "pertains to a three-dimensional configuration of goods" and refusing to disclose the 596 Patent or Related Patent Applications.

62. On information and belief, Smucker's evasion was knowingly made. The examiner's request was not limited to three-dimensional configurations; it asked whether "the applied-for mark, or any feature(s) thereof" had been the subject of any patent. Smucker knew the features depicted in the Bitten Pictorial Mark had been the subject of the 596 Patent and the Related Patent Applications.

63. On information and belief, Smucker never disclosed the 596 Patent, the Related Patent Applications, or any of its statements to the patent office about the functional nature of the crimped edge and circular shape to the trademark examiner during prosecution of the 408 Registration.

64. Smucker's omissions were material to the registrability of the 408 Registration, and on information and belief, the USPTO would not have issued the 408 Registration had it been aware of Smucker's patent proceedings and statements.

65. The Court should issue an appropriate order pursuant to 15 U.S.C. § 1119 directing the USPTO to cancel the 408 Registration.

## FOURTH CLAIM FOR RELIEF

### Cancellation of the Asserted Registrations Under 15 U.S.C. §§ 1064(3) and 1119

### (Functionality)

66. Trader Joe's incorporates by reference the factual allegations set forth above.

67. The Asserted Registrations are not entitled to registration on the Principal Register because the design features they claim as trademarks—the circular shape, peripheral undulating crimping, sealed filling, and, as to the 408 Registration, a bite mark—are functional.

68. The 596 Patent was granted for the utilitarian function of the round, sealed crustless sandwich, and Smucker's own statements to the USPTO during patent prosecution and

reexamination establish that the circular shape and crimped edge serve utilitarian purposes, including sealing the filling between the bread layers, preventing the crimped edge from separating, and retaining the fillings within. Additionally, the "bite mark" included in the 408 Registration serves a functional purpose: It shows the inside of the sandwich when used as intended, i.e., being consumed by a human.

69. Smucker cannot use trademark law to prevent others from employing the very functional features that Smucker itself claimed were essential to the product's utility in its patent proceedings.

70. The Court should issue an appropriate order pursuant to 15 U.S.C. § 1119 and 15 U.S.C. § 1115(b)(8) directing the USPTO to cancel the 577 Registration, 529 Registration, and 408 Registration.

## <u>FIFTH CLAIM FOR RELIEF</u>

### Declaratory Judgment—Invalidity

71. Trader Joe's incorporates by reference the factual allegations set forth above.

72. There is an existing and ongoing controversy between Trader Joe's and Smucker as to the validity of the Shape Mark, the Pictorial Mark, the Bitten Pictorial Mark, and any alleged trade dress rights in Smucker's product configuration.

73. Any purported trademark and/or trade dress rights claimed by Smucker in the Shape Mark, the Pictorial Mark, the Bitten Pictorial Mark, any associated registrations, and any common law rights, are invalid because each of these marks is purely functional.

74. Smucker has no protectable trademark or trade dress rights in the Shape Mark, the Pictorial Mark, or the Bitten Pictorial Mark, and Trader Joe's is entitled to entry of a declaratory judgment providing the same.

75. Trader Joe's is further entitled to the entry of a declaratory judgment that its products do not violate any provision of the Lanham Act or give rise to any liability for common law infringement or unfair competition under Ohio law or the laws of any other state.

## PRAYER FOR RELIEF

WHEREFORE, Trader Joe's respectfully requests that this Court enter:

A. Judgment against Smucker on all counterclaims alleged against it by Trader Joe's;

B. An order cancelling U.S. Trademark Registration No. 2,623,577, U.S. Trademark Registration No. 2,883,529, and U.S. Trademark Registration No. 5,941,408;

C. A declaratory judgment that the Shape Mark, the Pictorial Mark, and the Bitten Pictorial Mark are functional and therefore not entitled to any protection under the trademark or unfair competition laws of the United States or under the laws of the State of Ohio or any other state or jurisdiction;

D. An order pursuant to 15 U.S.C. § 1117 awarding Trader Joe's its costs, including reasonable attorneys' fees, incurred in the prosecution of these counterclaims;

E. An order pursuant to 15 U.S.C. § 1120 awarding Trader Joe's all damages it has incurred as a result of Smucker's wrongful registrations of the trademarks for crimped-edge crustless sandwiches;

F. An award of such other relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Trader Joe's demands a trial by jury on all claims, counterclaims, defenses, affirmative defenses and issues so triable.

Dated: October 2, 2026

Respectfully submitted,

*/s/ Laura R. Washington*
Laura R. Washington (admitted *pro hac vice*)
LATHAM & WATKINS LLP
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
(424) 653-5500 / (424) 653-5501 Fax
*laura.washington@lw.com*

Jennifer L. Barry (228066)
LATHAM & WATKINS LLP
12670 High Bluff Drive
San Diego, CA 92130
(858) 523-5400 / (858) 523-5450 Fax
*jennifer.barry@lw.com*

Kevin T. Shook (0073718)
FBT GIBBONS LLP
10 West Broad Street, Suite 2300
Columbus, OH 43215-3484
(614) 464-1211 / (614) 464-1737 Fax
*kshook@fbtgibbons.com*

*Attorneys for Defendant*
Trader Joe's Company