**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**

**THE J. M. SMUCKER COMPANY,**
an Ohio Corporation,

Plaintiff and Counter-Defendant,

v.

**TRADER JOE'S COMPANY,**
a California Corporation,

Defendant and Counterclaimant.

Case No. 5:25-cv-02181-JRA

Judge John R. Adams

**PLAINTIFF THE J. M. SMUCKER COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS DEFENDANT TRADER JOE'S COMPANY'S COUNTERCLAIMS**

# TABLE OF CONTENTS

**Page**


I. BRIEF STATEMENT OF THE ISSUES TO BE DECIDED .......... 1

II. INTRODUCTION .......... 1

III. BACKGROUND .......... 2

- A. Procedural History .......... 2
- B. The Asserted Trademark Registrations .......... 2
- C. The Referenced '596 Patent .......... 3
- D. The Alleged Fraud .......... 4

IV. LEGAL STANDARDS .......... 5

- A. Rule 12(b)(6) and Rule 9(b) .......... 5
- B. Pleading Fraud on the USPTO .......... 6
- C. Trademark Office Examination Procedure .......... 7

V. ARGUMENT .......... 8

- A. Functionality Cannot Support A Fraud Claim (Counterclaims I–III) .......... 9
- B. No Actionable Misrepresentation Is Pleaded .......... 10
  1. Smucker Had No Affirmative Duty to Volunteer Its Patents and Openly Responded When Asked (Counterclaims I, II, and III) .......... 10
  2. Smucker's Affirmative Statements Were Not False (Counterclaim I) .......... 11
  3. Actionable Concealment Has Not Been Pleaded (Counterclaim III) .......... 13
- C. Trader Joe's Does Not Plausibly Plead That Smucker Intended to Deceive the USPTO (Counterclaims I, II, and III) .......... 14
- D. Trader Joe's Does Not Plead Materiality With Particularity, or At All (Counterclaims I, II, and III) .......... 17
- E. Trader Joe's Pleads No Cognizable Injury and Its § 1120 Damages Claim Falls with Its Fraud Claim .......... 18
- F. Amending Trader Joe's Counterclaims Would Be Futile, and Dismissal Should Be With Prejudice .......... 19

VI. CONCLUSION .......... 20

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Anheuser-Busch, Inc. v. Bavarian Brewing Co.*,
264 F.2d 88 (6th Cir. 1959) ....................7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................4, 5

*Asian & W. Classics B.V. v. Selkow*,
2009 WL 3678263 (T.T.A.B. 2009) ....................14, 16, 19

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................4, 5, 18

*Bennett v. MIS Corp.*,
607 F.3d 1076 (6th Cir. 2010) ....................5, 18

*Bovee v. Coopers & Lybrand C.P.A.*,
272 F.3d 356 (6th Cir. 2001) ....................6

*CEI Grp., LLC v. CEI Composite Materials, LLC*,
No. 19-11611, 2021 WL 357018 (E.D. Mich. Feb. 2, 2021)....................5, 11, 16

*CFE Racing Prods., Inc. v. BMF Wheels, Inc.*,
793 F.3d 571 (6th Cir. 2015) ....................19

*Durnell's RV Sales, Inc. v. Jeff Couch's Campers, LLC*,
No. 1:22-cv-242, 2023 WL 1070235 (S.D. Ohio Jan. 27, 2023)....................14, 17, 19

*Entity Prods. v. Vargo*,
No. 1:07-cv-1197, 2007 WL 3129861 (N.D. Ohio Oct. 23, 2007)....................5

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
575 F.3d 1312 (Fed. Cir. 2009).................... passim

*Gen. Motors Corp. v. Lanard Toys, Inc.*,
468 F.3d 405 (6th Cir. 2006) ....................15

*GFR, Ltd. v. Farner*,
No. 1:18-cv-238, 2019 WL 1198538 (W.D. Mich. Mar. 14, 2019) ....................19

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Greer v. Strange Honey Farm, LLC*,
114 F.4th 605 (6th Cir. 2024) ....................5, 12, 13, 19

*Horizon Glob. Ams., Inc. v. N. Stamping, Inc.*,
549 F. Supp. 3d 730 (N.D. Ohio 2021)....................5

*In re Bose Corp.*,
580 F.3d 1240 (Fed. Cir. 2009).................... passim

*J.M. Smucker Co. v. Pierre Foods, Inc.*,
No. 5:08-cv-01970-SL (N.D. Ohio Mar. 6, 2009), ECF Nos. 15, 37 ....................20

*Jaguar Land Rover Ltd. v. Bombardier Recreational Prods., Inc.*,
No. 16-CV-13386, 2017 WL 2472851 (E.D. Mich. June 8, 2017) ....................6, 18

*Lucid Health, Inc. v. Premier Imaging Ventures, LLC*,
No. 2:20-cv-01055, 2020 WL 4933919 (S.D. Ohio Aug. 24, 2020) ....................6, 19

*Lucky's Detroit, LLC v. Double L, Inc.*,
No. 09-14622, 2010 WL 11545391 (E.D. Mich. Oct. 1, 2010)....................11, 19

*Nelson v. MillerKnoll, Inc.*,
181 F.4th 651 (6th Cir. 2026) ....................6, 18

*NSM Res. Corp. v. Microsoft Corp.*,
113 U.S.P.Q.2d 1029 (T.T.A.B. 2014) ....................7

*Nw. Corp. v. Gabriel Mfg. Co.*,
No. 95 C 2004, 1996 WL 732519 (N.D. Ill. Dec. 18, 1996) ....................9

*Saltire Indus., Inc. v. Waller, Lansden, Dortch & Davis, PLLC*,
491 F.3d 522 (6th Cir. 2007) ....................18

*Scooter Store, Inc. v. SpinLife.com, LLC*,
777 F. Supp. 2d 1102 (S.D. Ohio 2011) ....................7, 11, 14, 16

*Scotts Co. LLC v. SBM Life Sci. Corp.*,
No. 2:23-cv-1541, 2025 WL 2653809 (S.D. Ohio Sept. 16, 2025).................... passim

*Smith v. Gen. Motors LLC*,
988 F.3d 873 (6th Cir. 2021) ....................6

## TABLE OF AUTHORITIES
## (continued)

**Page**

*Soehnlen v. Fleet Owners Ins. Fund*,
844 F.3d 576 (6th Cir. 2016) ....................6

*Solo Cup Operating Corp. v. Lollicup USA, Inc.*,
No. 16 C 8041, 2017 WL 3581182 (N.D. Ill. Aug. 18, 2017) ....................9

*Spirit Clothing Co. v. Jerry Leigh of Cal., Inc.*,
No. 2:16-cv-08637-RGK-JPR, 2017 WL 5891056 (C.D. Cal. June 30, 2017) ....................9, 10, 18

**STATUTES**

15 U.S.C. § 1051 ....................7

15 U.S.C. § 1052 ....................7

15 U.S.C. § 1062 ....................7

15 U.S.C. § 1064(3) ....................2, 6

15 U.S.C. § 1119 ....................2, 6

15 U.S.C. § 1120 ....................2, 9, 18, 19, 20

**RULES**

Fed. R. Civ. P. 9 .................... passim

Fed. R. Civ. P. 12 ....................1, 5

**REGULATIONS**

37 C.F.R. § 1.56 ....................11

37 C.F.R. § 2.32 ....................10

37 C.F.R. § 2.61 ....................8, 11, 15

37 C.F.R. § 2.63 ....................8

**OTHER AUTHORITIES**

TMEP § 1202.02 ....................8, 14, 15

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

TMEP § 706 ....................15

TMEP § 713 ....................8, 14

TMEP § 814 ....................8

## I. BRIEF STATEMENT OF THE ISSUES TO BE DECIDED

Issue One: Whether Defendant Trader Joe's Company's ("Trader Joe's") counterclaims (Counterclaims I–III), which seek cancellation of three trademark registrations owned by Plaintiff The J. M. Smucker Company ("Smucker") based on fraud, should be dismissed under Federal Rule of Civil Procedure 12(b)(6) because Trader Joe's fails to plead the elements of and circumstances constituting fraud on the United States Patent and Trademark Office ("USPTO") with the particularity that Rule 9(b) of the Federal Rules of Civil Procedure requires.

Issue Two: Whether dismissal should be with prejudice because any further amendment would be futile.

## II. INTRODUCTION

In Counterclaims I through III, Trader Joe's asks the Court to cancel three of Smucker's U.S. Trademark Registrations on the theory that Smucker defrauded the United States Patent and Trademark Office. These are serious charges—and the law treats them that way. Fraud on the USPTO is a disfavored claim that must be pleaded with particularity and requires a knowing, material misrepresentation made with the specific intent to deceive. Trader Joe's offers nothing of the kind. Its counterclaims rest on conclusory labels, and most of its allegations of falsity, intent, and materiality are made only "on information and belief" or conclusory terms without supporting facts. That is no accident: no facts could support a fraud theory built on Smucker's alleged "omission" of information it had no duty to volunteer, or on statements that have not been shown to be false. Because the defect lies in the theory itself, not in the drafting, any amendment would be futile.

What Trader Joe's actually disputes is whether the registrations should have issued in light of purported functionality—a question it separately pleads in Counterclaim IV. But disagreeing with the USPTO's registrability determination is not fraud, and relabeling that disagreement as

fraud does not come close to meeting Rule 9(b)'s high bar. For the reasons set forth below, Counterclaims I–III, and the corresponding request for damages under 15 U.S.C. § 1120, should be dismissed with prejudice.

## III. BACKGROUND

Smucker sells round, crustless sandwiches with crimped edges under its Uncrustables® brand, which is protected by multiple trademark registrations. (Countercl. ¶ 9.) Those registrations form the basis of Smucker's claims against Trader Joe's for, *inter alia*, trademark infringement, dilution, and unfair competition arising from Trader Joe's sale of copycat crustless sandwich products. (ECF No. 1.) In response, in Counterclaims I through III, Trader Joe's seeks to cancel three of those registrations, alleging that Smucker defrauded the USPTO to obtain each of them. (Countercl. ¶¶ 2, 13, 46–65.)

### A. Procedural History

Smucker filed its Complaint on October 13, 2025. (ECF No. 1.) The Court denied Trader Joe's motion to dismiss Smucker's dilution claim and/or transfer on August 28, 2026. (ECF Nos. 10, 13.) Trader Joe's filed its operative Amended Answer and Counterclaims on October 2, 2026, asserting five Counterclaims. (ECF No. 18.) At issue in this Motion are Counterclaims I–III, in which Trader Joe's seeks cancellation of three of Smucker's trademark registrations for fraud pursuant to 15 U.S.C. §§ 1064(3) and 1119, and the corresponding request for damages pursuant to 15 U.S.C. § 1120, all of which Smucker moves to dismiss with prejudice. (ECF No. 18; Countercl. ¶¶ 46–65.)

### B. The Asserted Trademark Registrations

Three of Smucker's federally registered trademarks are at issue:

- U.S. Trademark Registration No. 2,623,577 covers a "configuration in a round pie-like shape with distinct peripheral undulating crimping" for sandwich products (the "Shape Mark").[1] (Countercl. ¶ 10.)

- U.S. Trademark Registration No. 2,883,529 covers "a pictorial representation of a round crustless sandwich" (the "Pictorial Mark"). (*Id.* ¶ 11.)

- U.S. Trademark Registration No. 5,941,408 covers "a two-dimensional pictorial representation of a round crustless sandwich with a bite taken out of it showing the filling inside" (the "Bitten Pictorial Mark"). (*Id.* ¶ 12.)

(Collectively, the foregoing are referred to as the "Asserted Registrations.")

### C. The Referenced '596 Patent

Trader Joe's fraud theory rests primarily on Smucker's alleged failure to disclose to the USPTO its U.S. Patent No. 6,004,596 (the "'596 Patent")—a patent that issued in 1999 and whose claims were all later cancelled on reexamination in 2002. (*See, e.g.*, Countercl. ¶¶ 2, 13, 46–65.) Although Trader Joe's builds its counterclaims around the '596 Patent, it did not attach the patent to its pleading. Smucker attaches it and the reexamination certificate as Exhibit A, and Smucker submits that the Court may take judicial notice of both. *See Scotts Co. LLC v. SBM Life Sci. Corp.*, No. 2:23-cv-1541, 2025 WL 2653809, at *6 (S.D. Ohio Sept. 16, 2025) (taking judicial notice of trademark applications and a recorded assignment on a motion to dismiss fraud counterclaims).

The '596 Patent claimed a sealed crustless sandwich that does not leak. (Countercl. ¶¶ 14–15; Ex. A at 2, 7–9.) The specification of the patent makes clear that "[t]he drawings are illustrative only" and that "[t]he cutting edge may be formed into various shapes to form a unique design for the sealed crustless sandwich." (Ex. A at 7.) On reexamination in the early 2000s, the USPTO cancelled all ten claims of the '596 Patent. (Countercl. ¶ 22; *see also* Ex. A at 10–11.) And every related patent application was "cancelled, rejected, or abandoned." (Countercl. ¶¶ 24, 27.)

[1] For the Court's ease of reference, Smucker uses the terms for Smucker's trademarks at issue that Trader Joe's adopted in its Counterclaims. (*See* Countercl. ¶¶ 47, 54, 60.)

Regardless, no claim of the patent at the center of Trader Joe's fraud theory survives, and the patent itself contemplates sandwiches of "various shapes." (Ex. A at 7.)

### D. The Alleged Fraud

Each of Trader Joe's fraud counterclaims rests on thin allegations, with the critical elements of falsity, intent, and materiality pleaded only "on information and belief" or in conclusory terms:

Counterclaim I: Counterclaim I targets the Shape Mark. It rests on Smucker's alleged nondisclosure of the '596 Patent and related filings as well as on two alleged statements Smucker made to the trademark examiner—(a) that the mark "does not represent a simpler or cheaper method of manufacturing," and (b) that Smucker's advertisements "do not tout the utilitarian advantage of the shape." (Countercl. ¶¶ 35–37, 48; *id.* ¶ 49.) The key allegations of falsity and nondisclosure are made only "on information and belief" (*id.* ¶¶ 48–49), and materiality is asserted in conclusory terms and, in part, on information and belief (*id.* ¶ 50).

Counterclaim II: Counterclaim II targets the Pictorial Mark and, as pleaded, rests solely on an alleged omission. Trader Joe's identifies no affirmative misstatement, and even materiality is alleged only "on information and belief." (*Id.* ¶¶ 56–57.)

Counterclaim III: Counterclaim III targets the Bitten Pictorial Mark. It rests on Smucker's on-the-record response to the trademark examiner amending its application to a two-dimensional pictorial mark, together with the same alleged nondisclosure of the '596 Patent and related filings. The key allegations, including the alleged "knowing evasion," are again made only "on information and belief." (*Id.* ¶¶ 43–45, 61–64.)

## IV. LEGAL STANDARDS

### A. Rule 12(b)(6) and Rule 9(b)

Under Rule 12(b)(6), a claim must be dismissed unless it pleads facts that, if true, state a facially plausible claim to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 679 (2009). "[L]abels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Although courts accept well-pleaded factual allegations as true and construe inferences in the pleader's favor, *Horizon Glob. Ams., Inc. v. N. Stamping, Inc.*, 549 F. Supp. 3d 730, 733 (N.D. Ohio 2021), they need not accept legal conclusions couched as factual allegations, *Iqbal*, 556 U.S. at 678; *Entity Prods. v. Vargo*, No. 1:07-cv-1197, 2007 WL 3129861, at *2 (N.D. Ohio Oct. 23, 2007).

Fraud claims face a higher bar still. Rule 9(b) requires a party to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The point of the Rule "is to prevent, not facilitate, casual allegations of fraud." *Greer v. Strange Honey Farm, LLC*, 114 F.4th 605, 615 (6th Cir. 2024). The pleading must "specify the 'who, what, when, where, and how' of the alleged fraud": it must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent," and "describe the fraudulent scheme and the resulting injury." *Greer*, 114 F.4th at 614–15 (citations omitted); *see also Bennett v. MIS Corp.*, 607 F.3d 1076, 1100 (6th Cir. 2010).

Rule 9(b)'s rigor extends to intent. Although intent may be alleged generally, that allowance is not a license for conclusory pleading: the pleading must still allege "facts giving rise to a strong inference that the [deceiving party] acted with the required state of mind." *CEI Grp., LLC v. CEI Composite Materials, LLC*, No. 19-11611, 2021 WL 357018, at *2 (E.D. Mich. Feb. 2, 2021) (citation and quotation omitted) (granting motion to dismiss fraud-based counterclaims). Bare labels will not do: "[g]eneralized and conclusory allegations that the [d]efendants' conduct was fraudulent do not satisfy Rule 9(b)." *Lucid Health, Inc. v. Premier Imaging Ventures, LLC*, No. 2:20-cv-01055, 2020 WL 4933919, at *3 (S.D. Ohio Aug. 24, 2020) (quoting *Bovee v.*

*Coopers & Lybrand C.P.A.*, 272 F.3d 356, 361 (6th Cir. 2001)) (dismissing fraud-based cancellation counterclaims with prejudice). Therefore, courts in this Circuit do not hesitate to dismiss fraud-based counterclaims, including claims for cancellation, when specific facts supporting a strong inference of deceptive intent have not been pleaded.

Nor are these heightened requirements limited to intent; they apply to each element of the fraud claim. *Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 586 (6th Cir. 2016) ("Under Rule 9(b), a plaintiff must plead each element of a fraud action with the requisite particularity in order to state a claim upon which relief can be granted."); *see also Jaguar Land Rover Ltd. v. Bombardier Recreational Prods., Inc.*, No. 16-CV-13386, 2017 WL 2472851, at *1 (E.D. Mich. June 8, 2017). And a party cannot cure deficient pleading by hedging its allegations: assertions made on "information and belief," without specific facts upon which the belief is reasonably based, are likewise insufficient. *Smith v. Gen. Motors LLC*, 988 F.3d 873, 885 (6th Cir. 2021); *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1330 (Fed. Cir. 2009) (allegations pled on "information and belief" are permitted under Rule 9(b) only when "the pleading sets forth the specific facts upon which the belief is reasonably based").

### B. Pleading Fraud on the USPTO

To state a cancellation claim grounded in fraud pursuant to 15 U.S.C. §§ 1119, 1064(3), the Sixth Circuit requires each of the following: (1) a false representation regarding a material fact; (2) the registrant's knowledge or belief that the representation is false; (3) the registrant's intent to induce reliance upon the misrepresentation; (4) actual, reasonable reliance on the misrepresentation; and (5) damages proximately caused by that reliance. *Nelson v. MillerKnoll, Inc.*, 181 F.4th 651, 668 (6th Cir. 2026) (citation omitted). A registration is obtained fraudulently "only if the applicant or registrant knowingly makes a false, material representation with the intent

to deceive the [US]PTO." *In re Bose Corp.*, 580 F.3d 1240, 1245 (Fed. Cir. 2009). Failure to plead any one of these elements with particularity is fatal.

Courts have long made clear that "[f]raud is not lightly to be presumed." *Anheuser-Busch, Inc. v. Bavarian Brewing Co.*, 264 F.2d 88, 92 (6th Cir. 1959). Fraud-based cancellation claims are "disfavored, and carr[y] a heavy burden of proof." *Scooter Store, Inc. v. SpinLife.com, LLC*, 777 F. Supp. 2d 1102, 1110 (S.D. Ohio 2011). They must leave "no room for speculation, inference or surmise," and "any doubt must be resolved against the charging party." *Bose*, 580 F.3d at 1243 (citation omitted). Intent is the linchpin. Adequate pleading "requires an allegation of a specific false statement of material fact that respondent made in obtaining the involved registration with *the intent to deceive* the USPTO." *NSM Res. Corp. v. Microsoft Corp.*, 113 U.S.P.Q.2d 1029, at *5 (T.T.A.B. 2014) (emphasis added) (citing *Bose*, 580 F.3d at 1244). "Subjective intent to deceive . . . is an indispensable element." *Id.* Not even "gross negligence" suffices. *Bose*, 580 F.3d at 1244–45. A pleading that merely labels a misstatement as knowing or deliberate therefore falls short; it must "allege sufficient underlying facts from which [the] court may reasonably infer that a party acted with the requisite state of mind." *Exergen*, 575 F.3d at 1330; *see also Scotts*, 2025 WL 2653809, at *4, *7.

### C. Trademark Office Examination Procedure

Trademark registrations on the principal register, like the Asserted Registrations in this case, are decided through an examination process conducted by a USPTO examining attorney. During that process, the applicant submits a verified application describing the mark, the goods, and the basis for registration. The examining attorney then decides whether the mark may be registered. 15 U.S.C. §§ 1051, 1062(a). Among the questions committed to the examining attorney is whether the mark "comprises any matter that, as a whole, is functional," which is a statutory bar to registration. 15 U.S.C. § 1052(e)(5); Trademark Manual of Examining Procedure

("TMEP") § 1202.02(a)(i)–(iii). The examining attorney controls what information is gathered. By regulation, the examining attorney may require the applicant to furnish such information as may be reasonably necessary to the proper examination of the application. 37 C.F.R. § 2.61(b).

In product-design trade dress applications, the TMEP directs examining attorneys to consider whether the applicant holds a utility patent, whether alternative designs exist, and whether the design results from a comparatively simple or inexpensive method of manufacture. TMEP § 1202.02(a)(v). The examination process supplies its own remedy when an applicant does not provide requested information or has not done so to the satisfaction of the examining attorney. In those situations, the examining attorney may maintain the requirement, make it final, or refuse registration for failure to comply. TMEP § 814. The applicable rules also permit an applicant to respond by arguing that a requirement does not apply or by amending the application, and the examining attorney then decides whether that response is sufficient. 37 C.F.R. § 2.63(a); TMEP § 713. Smucker's Bitten Pictorial Mark was the subject of such an inquiry during the examination process. (Countercl. ¶ 43.)

## V. ARGUMENT

Counterclaims I–III fail for five independent reasons, any one of which requires dismissal. *First*, each counterclaim merely recasts Trader Joe's functionality challenge as fraud. But functionality is a legal determination for the USPTO, not a fact that can be concealed from it. (Part V.A.) *Second*, Trader Joe's pleads no actionable misrepresentation. Smucker had no duty to volunteer information about its patents; the two statements Trader Joe's challenges in Counterclaim I are not pleaded as false with the requisite particularity; and, as to the Bitten Pictorial Mark, Smucker concealed nothing but openly responded to the examiner's inquiry. (Part V.B.) *Third*, Trader Joe's pleads no facts making an intent to deceive plausible. (Part V.C.) *Fourth*, Trader Joe's pleads no plausible materiality. (Part V.D.) *Fifth*, Trader Joe's pleads no

cognizable injury caused by the alleged fraud, so its request for damages under 15 U.S.C. § 1120 fails. (Part V.E.) These defects inhere in Trader Joe's theory, not merely its drafting, so dismissal should be with prejudice. (Part V.F.)

### A. Functionality Cannot Support A Fraud Claim (Counterclaims I–III).

Each of Counterclaims I–III rests on the same premise: that functionality "is a complete bar" to registration, so Smucker's alleged failure to disclose functionality-related information was material. (Countercl. ¶ 50.) That is the very theory Trader Joe's pleads directly in Counterclaim IV. (*Id.* ¶¶ 66–70.) But a fraud claim is not a vehicle for relitigating the USPTO's registrability findings. *Scotts*, 2025 WL 2653809, at *4–5. Courts consistently hold that functionality "is a determination made by the USPTO, not a material fact that can be withheld from the USPTO." *Spirit Clothing Co. v. Jerry Leigh of Cal., Inc.*, No. 2:16-cv-08637-RGK-JPR, 2017 WL 5891056, at *3 (C.D. Cal. June 30, 2017); *see also Nw. Corp. v. Gabriel Mfg. Co.*, No. 95 C 2004, 1996 WL 732519, at *4 (N.D. Ill. Dec. 18, 1996) ("[F]unctionality is not a proper basis for a claim of fraud on the PTO. . . . It is not a material fact per se which can be withheld from the PTO."); *Solo Cup Operating Corp. v. Lollicup USA, Inc.*, No. 16 C 8041, 2017 WL 3581182, at *3 (N.D. Ill. Aug. 18, 2017) ("Functionality is not a fact that can be withheld from the PTO but, rather, a determination the examiner must make when evaluating the mark for registration."). Trader Joe's functionality challenge, whatever its merit, belongs in Counterclaim IV—not in a charge of fraud.

The holding in *Spirit Clothing* is directly on point. In that case, the counterclaimants sought cancellation of a design registration on the theory that the registrant fraudulently obtained registration for a stitching design it knew was functional. 2017 WL 5891056, at *1. The court dismissed the counterclaim under Rule 9(b) because the application accurately described the stitching, and "[w]ithout submitting an inaccurate description of the proposed mark," the registrant "cannot falsely represent or hide functionality from the USPTO." *Id.* at *1–3. Bare allegations

that the registrant knew of the functionality were likewise insufficient. *Id.* at *4–5. The same reasoning applies in this case. Trader Joe's does not allege that Smucker inaccurately described any of the Asserted Registrations. The marks were before the examiner, who was fully able to assess functionality.

Each Asserted Registration depicts and describes exactly what Trader Joe's says is functional: a "round pie-like shape with distinct peripheral undulating crimping," "a round crustless sandwich," and a round crustless sandwich "with a bite taken out of it showing the filling inside." (Countercl. ¶¶ 10–12.) Trader Joe's does not allege that any drawing or description misrepresented the marks. The examiners therefore had the allegedly functional features before them and were free to refuse registration on that ground; Smucker could not "hide" features that appeared on the face of its own applications. Trader Joe's disagreement is with the USPTO's registration determination, and that disagreement belongs, if anywhere, in Counterclaim IV. Thus, Counterclaims I–III fail at the threshold.

**B. No Actionable Misrepresentation Is Pleaded.**

**1. Smucker Had No Affirmative Duty to Volunteer Its Patents and Openly Responded When Asked (Counterclaims I, II, and III)**

Trader Joe's relies on a theory of fraud by omission, faulting Smucker for not disclosing "the '596 Patent, the Related Patent Applications, or any of it[s] statements to the patent office." (Countercl. ¶¶ 49, 56, 63.) That theory fails as a matter of law.

An applicant's obligations to the USPTO arise from "the statutory requirements of the Lanham Act," which prohibit "knowingly inaccurate or knowingly misleading statements." *Bose*, 580 F.3d at 1243. Thus, an omission can be fraudulent only if there is a duty to disclose the omitted information. Trader Joe's identifies no such duty because none exists. Trademark applications do not call for the disclosure of patent filings. *See generally* 37 C.F.R. § 2.32. And no statute, rule, or regulation requires a trademark applicant to volunteer its patents. *Lucky's Detroit, LLC v.*

*Double L, Inc.*, No. 09-14622, 2010 WL 11545391, at *3 (E.D. Mich. Oct. 1, 2010) (citation omitted); *see also CEI Grp.*, 2021 WL 357018, at *3. Nondisclosure of information that does not itself bar registration cannot support a fraud claim. *See id.*; *Scooter Store*, 777 F. Supp. 2d at 1112.

Trader Joe's invites error by suggesting that the Court impose the duties of a patent applicant on trademark applicants. *Compare* 37 C.F.R. § 1.56 (patent applicants' "duty to disclose to the Office all information known to that individual to be material to patentability"), *with* 37 C.F.R. § 2.61(b) (USPTO "may require" trademark applicants to furnish information "reasonably necessary to the proper examination of the application" (emphasis added)). Importantly, the Federal Circuit declined to import patent law's negligence-based inequitable conduct standard into trademark fraud claims, *Bose*, 580 F.3d at 1244–45, which is what Trader Joe's is asking this Court to do with its fraud by omission claims. The omission theory underlying each of Counterclaims I–III fails as a matter of law and must be dismissed with prejudice.

**2. Smucker's Affirmative Statements Were Not False (Counterclaim I)**

Trader Joe's fares no better when it turns to what Smucker did say. Counterclaim I fails at the first element: falsity. Trader Joe's challenges two statements in Smucker's August 2001 Office Action response for the Shape Mark and its operative allegation that those statements were false is made only "***[o]n information and belief***." (Countercl. ¶¶ 35–37, 48 (emphasis added).) Trader Joe's pleads no particularized facts showing that either statement was false when made.

*First*, Smucker stated that the mark "does not represent a simpler or cheaper method of manufacturing." Trader Joe's identifies no contradicting statement to the USPTO, alleging only that Smucker was "simultaneously arguing to the patent office that the same features were functional innovations" relating to the distribution of fillings, production efficiency, and manufacturing yield. (Countercl. ¶ 48; *see also id.* ¶¶ 36, 49–50.) Although Trader Joe's describes these patent-office arguments without the "information and belief" qualifier (*id.* ¶ 36), it does not

identify which patent application, which argument, who made it, or when—precisely the "who, what, when, where, and how" Rule 9(b) demands. *Greer*, 114 F.4th at 614–15; *Exergen*, 575 F.3d at 1327. And even accepting Trader Joe's factual allegations as true, as the Court must at this stage, the arguments Trader Joe's attributes to Smucker do not contradict the statement in Smucker's August 2001 Office Action response, because they say nothing about whether Smucker's design is simpler or cheaper to make than alternative designs. The '596 Patent claims a sealed crustless sandwich, and nothing in its description suggests that a sandwich with a crimped edge and circular shape is simpler or cheaper to manufacture than any alternative shapes. (Ex. A at 7–9.) Nor does Smucker's knowledge of its own patent show that Smucker knew its statement to the trademark examiner would mislead. The theory Trader Joe's advances (Countercl. ¶¶ 2, 28, 39, 49, 56)—that Smucker should have recognized a tension between its patent and trademark filings—is the very negligence theory the *Bose* court rejected. *Bose*, 580 F.3d at 1244–45.

*Second*, Smucker stated that its advertisements "do not tout the utilitarian advantage of the shape." (Countercl. ¶ 48.) Trader Joe's does not identify a single advertisement touting any utilitarian advantage. It points only to advertisements stating that the "round shape" and "sealed edges" make "every bite fun and neat to eat," and then supplies its own gloss on what "fun" and "neat" supposedly mean. (*Id.* ¶ 37.) Describing a sandwich as "fun and neat to eat" promotes the eating experience; it does not tout a utilitarian advantage of the shape. Trader Joe's contrary reading is argument, not a well pleaded fact showing that Smucker's statement was untrue, and Trader Joe's interpretation of the advertisements has no bearing on whether Smucker accurately characterized them to the examiner. *See Greer*, 114 F.4th at 615–16. Whatever its merit, that reading goes to functionality, which belongs in Counterclaim IV—not in a charge of fraud. *See supra* Part V.A.

Trader Joe's characterizes Smucker's statements as "half truths" (Countercl. ¶ 37), conceding that they are literally true. And while the Lanham Act does reach knowingly misleading statements as well as false ones, *Bose*, 580 F.3d at 1244, a pleading that rests on a literally true statement must do more, not less. The pleading must identify, with particularity, the specific omitted fact that rendered the statement misleading, explain how the statement, read in context, conveyed a false impression to the examiner, and allege facts supporting a strong inference that Smucker knew the statement would mislead and intended that result. *See Greer*, 114 F.4th at 614–15; *Exergen*, 575 F.3d at 1327. Again, Trader Joe's pleads none of this, offering only a label, not the particularized facts that make a true statement actionable.

What remains is a pleading that "simply avers the substantive elements" of fraud "without setting forth the particularized factual bases for the allegation, [which] does not satisfy Rule 9(b)." *Exergen*, 575 F.3d at 1326–27. Thus, Trader Joe's affirmative-misrepresentation theory fails.

**3. Actionable Concealment Has Not Been Pleaded (Counterclaim III)**

Counterclaim III fails for an additional and different reason: Smucker did not conceal anything from the trademark examiner—it responded to the examiner on the record. (Countercl. ¶¶ 43–45, 61–63.) As set forth *supra* Part IV.C, the trademark examiner exercised its authority to request additional information related to a functionality inquiry for the Bitten Pictorial Mark.[2] In response, Smucker stated on the record its position that, given its amendment of the mark to a two-dimensional pictorial representation, no further response was required. (Countercl. ¶¶ 43–44.)

[2] Because Trader Joe's pleads the contents of the USPTO file histories for the Asserted Registrations, including the specimens of use Smucker submitted to the USPTO during the prosecution of the applications for the Asserted Registrations to issue, and of the '596 Patent, and its fraud counterclaims depend on them (*see, e.g.*, Countercl. ¶¶ 15–22, 29–45), Smucker submits that the Court may consider those records without converting this Motion into a motion for summary judgment, and Smucker submits the Court may also take judicial notice of them as public USPTO records. *See Scotts*, 2025 WL 2653809, at *6 (taking judicial notice of trademark applications and a recorded assignment on a motion to dismiss fraud counterclaims); *Durnell's RV Sales, Inc. v. Jeff Couch's Campers, LLC*, No. 1:22-cv-242, 2023 WL 1070235, at *2 n.3 (S.D. Ohio Jan. 27, 2023) (taking judicial notice of trademark application).

The examiner then approved the application for publication, effectively withdrawing the information requirement, as the examiner was free to do. *See* TMEP § 713; *Scotts*, 2025 WL 2653809, at *5. The USPTO generally reserves functionality inquiries to trade dress applications. *See* TMEP § 1202.02 (requiring examiners of trade dress applications to separately consider functionality with no such provision for pictorial marks). An openly stated legal position, presented to the very examiner charged with evaluating it, is the opposite of concealment. *See Scotts*, 2025 WL 2653809, at *6. And, tellingly, Trader Joe's allegation that the response was a "knowing" evasion is made only on information and belief, with no supporting facts. (Countercl. ¶ 62.)

The holding in *Scooter Store* confirms that knowledge plus silence is not fraud. In that case, the court dismissed a fraud counterclaim premised on the registrant's failure to disclose a third party's Ohio trade-name registration, even though the registrant's president had spoken with the third party's owner, because "[m]ere knowledge . . . of another's actual use of a mark is insufficient to show bad faith." 777 F. Supp. 2d at 1108, 1111–12. So too in this case. Trader Joe's alleges only that Smucker knew of its own patent filings and did not mention them (Countercl. ¶¶ 39, 56, 63)—not that Smucker was required to disclose them and failed to do so. If knowledge of a competitor's registration does not trigger a duty to disclose, knowledge of one's own patent filings that the application never called for certainly does not.

### C. Trader Joe's Does Not Plausibly Plead That Smucker Intended to Deceive the USPTO. (Counterclaims I, II, and III)

Subjective intent to deceive is "an indispensable element" of any fraud claim. *Bose*, 580 F.3d at 1245. "[A] pleading of fraud on the USPTO must also include an allegation of intent," *Asian & W. Classics B.V. v. Selkow*, 2009 WL 3678263, at *2 (T.T.A.B. 2009), supported by facts from which the Court may reasonably infer that the registrant acted with the requisite state of mind,

*Exergen*, 575 F.3d at 1330. Trader Joe's pleads no such facts. Its allegations of nondisclosure and knowing evasion rest on "information and belief" alone (Countercl. ¶¶ 39, 45, 48–49, 56, 62–63), and its remaining allegations simply label the alleged conduct material or false (*id.* ¶¶ 50, 57, 64). The facts Trader Joe's actually does plead point the other way.

The very prosecution history Trader Joe's invokes negates any inference of deceptive intent. *See Scotts*, 2025 WL 2653809, at *6. For the Shape Mark, the examiner refused registration only because the configuration was not inherently distinctive—not because it was functional—and Smucker responded with acquired-distinctiveness evidence, which the examiner evaluated before allowing registration. (Countercl. ¶¶ 30–31.) That distinction matters because distinctiveness and functionality are separate inquiries: a functional feature cannot be protected regardless of whether it has acquired secondary meaning, while a nonfunctional feature that lacks inherent distinctiveness may be registered upon proof of acquired distinctiveness. *See* TMEP § 1202.02(b) ("A claim of acquired distinctiveness . . . will not overcome a functionality refusal, but may overcome a nondistinctiveness refusal."); *see also Gen. Motors Corp. v. Lanard Toys, Inc.*, 468 F.3d 405, 414 (6th Cir. 2006) (describing trade dress as product or packaging design that has acquired distinctiveness). Smucker's statements in response to a distinctiveness refusal therefore cannot plausibly be recast as an effort to deceive the examiner about functionality—a separate question the examiner was free to raise at any time. *See* 37 C.F.R. § 2.61; TMEP § 706. And in 2019, when the examiner asked about patents in connection with the Bitten Pictorial Mark, Smucker answered openly, asserting its legal position. (Countercl. ¶ 44.) Such open representations "substantially undermine any potential inference of scienter." *Scotts*, 2025 WL 2653809, at *5.

The decision in *Scotts* underscores this point. In that case, the counterclaimant alleged that Scotts falsely told the USPTO that its red-rectangle designs were "in use" when they appeared only as background for the ORTHO logo. 2025 WL 2653809, at *2–3. Like the Shape Mark application, Scotts' applications were initially refused as not inherently distinctive and then allowed on a showing of acquired distinctiveness. *Id.* at *2. The court dismissed the counterclaim because the real complaint was with "the USPTO's decision to issue the marks," and Scotts' consistent representations and specimens "substantially undermine[d] any potential inference of scienter." *Id.* at *5–6. The same is true in this case: Trader Joe's quarrel is with the examiner's registrability decision, and Smucker's open record forecloses any inference of intent to deceive.

Trader Joe's central theory about intent is that Smucker "concealed" its patent filings from trademark examiners. (Countercl. ¶¶ 13, 39, 49, 56.) That theory fails for at least two reasons. *First*, knowledge of patent information is not knowledge that any representation to the USPTO was false. *See CEI Grp.*, 2021 WL 357018, at *5 (allegations showing knowledge of another's use did not show knowledge of claimed rights); *Scooter Store*, 777 F. Supp. 2d at 1112 ("Mere knowledge . . . of another's actual use of a mark is insufficient to show bad faith."). At most, Trader Joe's alleges that Smucker should have connected its patent filings to its trademark applications—the very negligence theory *Bose* rejected. 580 F.3d at 1244–45; *Asian & W. Classics*, 2009 WL 3678263, at *2 ("knew or should have known" allegations insufficient to plead fraud).

*Second*, the concealment theory is belied by Trader Joe's own allegations that Smucker made public statements to the same agency, the USPTO. (Countercl. ¶¶ 2, 48.) The '596 Patent that Smucker supposedly "concealed" has been a public record since at least 1999, and it treats

shapes as interchangeable—further undermining any inference that Smucker had a motive to hide it. (Ex. A at 2, 7 ("The cutting edge may be formed into various shapes . . . .").)

Finally, the specimens of use Smucker filed with the applications for the Shape Mark and Pictorial Mark—public records in the very file histories Trader Joe's invokes—told the examiners that the product was "PATENT PENDING" and identified "Patent No. 6,004,596." (Ex. B at 2; Ex. C at 2, 4, 6–7, 10–11; Ex. D at 4, 6; *see also* Ex. E at 4.)[3] An applicant that places its patent status on the face of the very specimens it is submitting to the USPTO to obtain registration is not plausibly trying to hide that patent from the USPTO, and the Court need not accept allegations contradicted by documents properly before it. *See Scotts*, 2025 WL 2653809, at *6 (relying on judicially noticed USPTO records to reject fraud allegations).

**D. Trader Joe's Does Not Plead Materiality With Particularity, or At All. (Counterclaims I, II, and III)**

Trader Joe's failure to plead materiality provides yet another independent basis for dismissal. A misrepresentation or omission is material "only if the registration should not have issued if the truth were known to the examiner." *Durnell's RV*, 2023 WL 1070235, at *5 (citation omitted). Trader Joe's pleads materiality only through the bare assertion, made "on information and belief," that the USPTO "would not have issued" the registrations had it known of the patent filings. (Countercl. ¶¶ 48, 50, 57, 62, 64.) It pleads no facts about what the examiners considered, what the patent filings disclosed that the applications did not, or how that information would have changed any examiner's decision. Instead, Trader Joe's simply asserts that the patent filings rendered the Asserted Registrations functional and that the registrations therefore would not have

[3] Exhibit B is a December 21, 2000 Specimen for Reg. No. 2,623,577, Exhibit C is a December 6, 2007 Specimen (a) for Reg. No. 2,623,577, Exhibit D is a December 6, 2007 Specimen (b) for Reg. No. 2,623,577, and Exhibit E is a January 16, 2004 Specimen for Reg. No. 2,883,529.

issued. That is a "formulaic recitation" of the element, not a particularized pleading of it. *See Twombly*, 550 U.S. at 555; *Exergen*, 575 F.3d at 1326–27.

Nor can Trader Joe's plead materiality. As explained above, functionality is a legal determination the USPTO makes on the mark as depicted, not a fact an applicant can conceal. *See supra* Part V.A.; *Spirit Clothing*, 2017 WL 5891056, at *3. The purportedly functional "crimped edge and circular shape" (Countercl. ¶¶ 49, 56, 63) appeared on the face of the very applications the examiners reviewed, and the examiners were free to conduct a functionality inquiry if they deemed it material to registration. Withholding patent filings could not have hidden features that were in plain view. And for the Bitten Pictorial Mark, the examiner effectively withdrew the requirement to provide additional patent-related information once the application was amended to a two-dimensional mark—confirming that such information was not material to registration of the pictorial marks. (*See* Ex. F at 2–3 (response entered Aug. 7, 2019, describing mark as two-dimensional pictorial representation); Ex. G at 2–3 (approved for publication Aug. 29, 2019).)

### E. Trader Joe's Pleads No Cognizable Injury and Its § 1120 Damages Claim Falls with Its Fraud Claim.

Counterclaims I–III also fail because Trader Joe's does not plead any injury proximately caused by the alleged fraud required by Rule 9(b). *Bennett*, 607 F.3d at 1100; *Nelson*, 181 F.4th at 668. In Counterclaims II and III, it alleges no injury at all. In Counterclaim I, it alleges only that Reg. No. 2,623,577 "has been asserted against Trader Joe's in this lawsuit." (Countercl. ¶ 51.) That is not an injury caused by fraud. The injury must be clearly articulated and flow from the fraud itself; the cost of defending litigation does not suffice. *Saltire Indus., Inc. v. Waller, Lansden, Dortch & Davis, PLLC*, 491 F.3d 522, 530 (6th Cir. 2007) ("[D]amages attributable solely to the existence of litigation are clearly insufficient to sustain the necessary element of damages in a fraud claim."); *see also Jaguar Land Rover*, 2017 WL 2472851, at *2 & n.2 (rejecting "argument

that the attorney fees resulting from this litigation qualify as an injury proximately caused by the allegedly fraudulent registration"). And Trader Joe's cannot cure this defect by amendment. Even assuming the Asserted Registrations would not have issued but for the alleged fraud, Trader Joe's would face substantially the same claims because the Lanham Act protects both registered and unregistered trademarks. *See CFE Racing Prods., Inc. v. BMF Wheels, Inc.*, 793 F.3d 571, 599 (6th Cir. 2015) (affirming judgment for plaintiff on infringement claims asserted for both registered and unregistered marks). Any harm Trader Joe's could claim would flow from Smucker's enforcement of its trademark rights, not from issuance of the Asserted Registrations.

### F. Amending Trader Joe's Counterclaims Would Be Futile, and Dismissal Should Be With Prejudice.

Counterclaims I–III and the damages request pursuant to § 1120 should be dismissed with prejudice. Leave to amend need not be granted when amendment would be futile. An amendment is futile when the pleading, as amended, "could not withstand a Rule 12(b)(6) motion to dismiss." *Greer*, 114 F.4th at 617 (quotation and citation omitted) (affirming denial of leave to amend fraud claims as futile); *GFR, Ltd. v. Farner*, No. 1:18-cv-238, 2019 WL 1198538, at *4 (W.D. Mich. Mar. 14, 2019). Courts in this Circuit have dismissed similarly deficient fraud claims with prejudice on a motion to dismiss. *Lucid Health*, 2020 WL 4933919, at *3; *Lucky's Detroit*, 2010 WL 11545391, at *4; *Durnell's RV*, 2023 WL 1070235, at *7.

Dismissal with prejudice is warranted because the defects are legal, not technical, and no additional facts could cure them. But Trader Joe's should not be granted leave to amend for an additional reason: The purposes of Rule 9(b) include "weeding out baseless claims, preventing fishing expeditions and fraud actions in which all facts are learned after discovery, and serving the goals of Rule 11." *Asian & W. Classics*, 2009 WL 3678263, at *1. Those purposes apply with full force in this case.

The core allegations of Counterclaims I–III track, often nearly verbatim, an amended counterclaim filed against Smucker seventeen years ago. (*Compare* Countercl. ¶ 37 (alleging that "Smucker's half-truths to the USPTO . . . included assertions that advertising of the sandwiches emphasized that the 'round shape' and 'sealed edges' make 'every bite fun and neat to eat' and did 'not tout the utilitarian advantage of the shape,' while failing to disclose that: (a) the sealed edges assist in making the sandwich 'neat to eat' by retaining the fillings and preventing leakage of filling; and (b) the round shape assists in making 'every bite fun and neat to eat' . . .") *with* Am. Answer & Countercl., *J.M. Smucker Co. v. Pierre Foods, Inc.*, No. 5:08-cv-01970-SL (N.D. Ohio Mar. 6, 2009), ECF No. 15, ¶ 96 (alleging that "[t]he half truths that Smucker made to the USPTO . . . included Smucker's assertions that advertising of the sandwiches emphasized that the 'round shape' and 'sealed edges' make 'every bite fun and neat to eat' and did 'not tout the utilitarian advantage of the shape,' while failing to disclose that: (a) the sealed edges assist in making the sandwich 'neat to eat' by retaining the filings and preventing leakage of filling; and (b) the round shape assists in making 'every bite fun and neat to eat' . . ."). These fraud claims were not pursued and were dismissed with prejudice by stipulation. Stipulation & Order, *J.M. Smucker Co. v. Pierre Foods, Inc.*, No. 5:08-cv-01970-SL (N.D. Ohio June 30, 2009), ECF No. 37 (Ex. H at 2). The 2009 pleading did not attribute to Smucker the patent-office arguments that Trader Joe's now alleges Smucker made. (*Compare* Countercl. ¶ 36, *with Pierre Foods*, ECF No. 15, ¶¶ 28–29.) Allegations recycled from another litigant's pleading and embellished to attribute statements to Smucker that the original never did lack any independent factual basis—precisely the kind of pleading Rule 9(b) is designed to eliminate.

## VI. CONCLUSION

For the foregoing reasons, the Court should dismiss Counterclaims I, II, and III and the corresponding request for damages under § 1120 with prejudice.

Dated: October 23, 2026

Respectfully submitted,

*/s/ Meredith M. Wilkes*

Meredith M. Wilkes (0073092)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH 44114
(216) 586-3939
(216) 579-0212 (facsimile)
mwilkes@jonesday.com

*Attorneys for The J. M. Smucker Company*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on October 23, 2026, a copy of the foregoing was filed with the Clerk of the Court via the Court's CM/ECF system, which will send notification to all counsel of record.

*/s/ Meredith M. Wilkes*
Meredith M. Wilkes

## **CERTIFICATE OF COMPLIANCE**

The undersigned hereby certifies that the foregoing Plaintiff The J. M. Smucker Company's Memorandum of Law in Support of Its Partial Motion to Dismiss Defendant Trader Joe's Company's Counterclaims complies with the page limitation set forth in Local Rule 7.1(f) for memoranda related to dispositive motions in standard track cases.

*/s/ Meredith M. Wilkes*
Meredith M. Wilkes